683 F.2d 305
 111 L.R.R.M. (BNA) 2286, 95 Lab.Cas. P 13,743
 INDUSTRIAL, TECHNICAL AND PROFESSIONAL EMPLOYEES DIVISION,
NATIONAL MARITIME UNION OF AMERICA, AFL-CIO, Petitioner,
and
Monfort of Colorado, Inc., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
United Food and Commercial Workers International Union,
AFL-CIO, Intervenor.
 Nos. 81-7470, 81-7481 and 81-7584.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 17, 1982.
Decided July 26, 1982.
 
 Sidney H. Kalban, New York City, argued for petitioner; Sidney H. Kalban, Phillips & Cappiello, New York City, James C. Zalewski, Tate, Bruckner & Skyes, Lincoln, Neb., on brief.
 James Y. Callear, Washington, D. C., for respondent.
 On Petitions for Review and Cross-Applications for Enforcement of an Order of The National Labor Relations Board.
 Before MERRILL and HUG, Circuit Judges, and BROWN*, District Judge.
 HUG, Circuit Judge:
 
 
 1
 The National Labor Relations Board (the "Board") found that Monfort of Colorado, Inc. ("Monfort") violated §§ 8(a)(1) and (2) of the National Labor Relations Act ("Act"), 29 U.S.C. §§ 158(a)(1) and (2), by giving unlawful assistance and support to the National Maritime Union ("NMU") and by recognizing, and entering into a collective bargaining agreement with, NMU at a time when NMU did not represent an uncoerced majority of Monfort's employees. The Board found that NMU violated § 8(b)(1)(A) of the Act, 29 U.S.C. § 158(b) (1)(A), by accepting such unlawful assistance and recognition from Monfort. The Board ordered Monfort to withdraw recognition from NMU and required NMU to cease acting as the exclusive bargaining agent of Monfort's employees. The Board also ordered Monfort and NMU to jointly and severally reimburse all former and present Monfort employees for NMU dues and union fees deducted pursuant to the unlawful collective bargaining agreement. Monfort and NMU seek review of the Board's decision and order. The Board cross-applies for enforcement of its order. The United Food and Commercial Workers International Union ("UFCU"), the charging party before the Board, intervenes in support of the application for enforcement. We enforce the Board's order.
 
 
 2
 Monfort and NMU first contend that there is not substantial evidence in the record to support the Board's finding that they committed the charged unfair labor practices. The Board found that NMU began to solicit authorization cards from Monfort's employees sometime after June 11, 1979. NMU representatives were provided with virtually unlimited access to Monfort's facilities and they had complete freedom to conduct their organizing activities during working hours with the full cooperation of Monfort supervisors. The NMU organizers made threats and misrepresentations to Monfort employees in order to obtain their signatures on authorization cards. On June 14, 1979, NMU presented 52 authorization cards to Monfort, representing a majority of the workers employed by Monfort on that date. Without verifying these cards, Monfort immediately recognized NMU as the sole bargaining agent of its employees. Monfort and NMU then negotiated, agreed upon, and executed a collective bargaining agreement, effective June 14, 1979, which contained a dues checkoff provision. Monfort and NMU later entered into a handwritten "memorandum of understanding" that expanded the collective bargaining agreement to include "all regular, full-time hourly production and maintenance employees."
 
 
 3
 We must enforce the Board's order if the Board correctly applied the law and its findings of fact are supported by substantial evidence on the record as a whole. 29 U.S.C. § 160(e); NLRB v. Big Bear Supermarkets No. 3, 640 F.2d 924, 928 (9th Cir.), cert. denied, 449 U.S. 919, 101 S.Ct. 318, 66 L.Ed.2d 147 (1980). The Board's interpretation of the Act is entitled to considerable deference. Ford Motor Co. v. NLRB, 441 U.S. 488, 99 S.Ct. 1842, 60 L.Ed.2d 420 (1979). There is clearly substantial evidence on the record as a whole to support the Board's factual findings in this case. The Board's conclusion that these findings demonstrate unlawful employer assistance and union misrepresentation that served to coerce employees in their selection of a bargaining agent is inherently reasonable and well within its discretion. See NLRB v. Link-Belt Co., 311 U.S. 584, 588, 61 S.Ct. 358, 361, 85 L.Ed. 368 (1941); Sheraton-Kauai Corp. v. NLRB, 429 F.2d 1352, 1357 (9th Cir. 1970).
 
 
 4
 We find no merit in Monfort's contention that the Board and the administrative law judge ("ALJ") relied upon secondary evidence in finding that it committed unfair labor practices. The ALJ specifically stated that he was considering secondary evidence only to corroborate primary evidence offered by the General Counsel. The Board, however, concluded that the direct evidence offered in support of the charges was so substantial that it need not consider the propriety of the ALJ's decision to use secondary evidence for any purpose. Thus, the Board expressly did not rely on secondary evidence in concluding that Monfort committed unfair labor practices.
 
 
 5
 Monfort's assertion that the Board and the ALJ drew adverse inferences from its refusal to comply with subpoenas issued by the General Counsel is equally without merit. The ALJ drew no adverse inference from Monfort's failure to produce subpoenaed witnesses and the Board did not address the question because it found that the direct evidence produced at the administrative hearing established the charges.
 
 
 6
 We also reject Monfort's claim that it was denied due process by the litigation of matters outside the scope of the complaint. Actions before the Board are not subject to the technical pleading requirements that govern private lawsuits. NLRB v. Carilli, 648 F.2d 1206, 1210 (9th Cir. 1981). The charge need not be technically precise as long as it generally informs the party charged of the nature of the alleged violations. Id. Moreover, where the issue is fully and fairly litigated at the administrative hearing, the Board may find an unfair labor practice even though no specific charge is made in the original complaint. Clear Pine Mouldings, Inc. v. NLRB, 632 F.2d 721, 728 (9th Cir. 1980), cert. denied, 451 U.S. 984, 101 S.Ct. 2317, 68 L.Ed.2d 841 (1981); NLRB v. Olympic Medical Corp., 608 F.2d 762, 763 (9th Cir. 1979).
 
 
 7
 The complaint in this case unquestionably informed Monfort of the charges against it by alleging that Monfort was guilty of violating sections 8(a)(1) and (2) of the Act by recognizing and entering into a collective bargaining agreement with NMU even though NMU did not represent an uncoerced majority of its employees. In spite of its alleged surprise at the specific factual contentions brought forth at the hearing, Monfort failed to object to the introduction of the vast majority of this evidence. Moreover, Monfort's extensive cross-examination of those witnesses who testified concerning the "surprise" factual allegations belies its claim that it was prejudiced by the introduction of such testimony. Even if it could be said that the charge was lacking in specificity, the record conclusively demonstrates that the "surprise" factual issues were fully and fairly litigated at the hearing.
 
 
 8
 Finally, Monfort and NMU contend that, even if substantial evidence supports the Board's conclusion that they committed unfair labor practices, dues reimbursement is an inappropriate remedy in this case. We disagree. The Board has broad discretion in fashioning remedies to effectuate the policies of the Act in light of the circumstances of each case. See East Bay Chevrolet v. NLRB, 659 F.2d 1006, 1011 (9th Cir. 1981). This discretionary power is subject only to limited judicial review. Rayner v. NLRB, 665 F.2d 970, 976 (9th Cir. 1982). This court will overturn the Board's choice of a dues reimbursement remedy only where the reimbursement is shown to be punitive rather than compensatory or where the Board orders reimbursement absent a showing that employees were coerced in their choice of a bargaining representative. Morrison-Knudsen Co. v. NLRB, 276 F.2d 63, 76 (9th Cir. 1960), cert. denied sub nom. NLRB v. Laborers Local No. 324, 366 U.S. 910, 81 S.Ct. 1082, 6 L.Ed.2d 233 (1961). Monfort and NMU argue both that the Board did not show that any specific employees were coerced into signing authorization cards and that the remedy is punitive rather than compensatory. Neither contention is persuasive.
 
 
 9
 Substantial evidence supports the Board's determination that Monfort's and NMU's activities constituted illegal assistance and misrepresentation sufficient to coerce employees in the exercise of their section 7 rights. The employees involved were temporary construction workers who hoped to obtain permanent employment with Monfort. NMU organizers promised employees that they would be guaranteed a permanent job if they signed NMU authorization cards and that if they failed to select NMU as their bargaining agent no promises of future employment could be made. The Board found that these references to future job status were significant in view of the employees' awareness of Monfort's support for NMU. The employees would reasonably believe that, because of Monfort's support for NMU, NMU had the ability to carry out threats of a possible job loss. In these circumstances, coercion is established by the fact that employees joined the union after being informed that their selection for a permanent job hinged upon their union membership.
 
 
 10
 Reimbursement in this case is not punitive. Reimbursement would effectuate the policy of the Act by returning to employees money paid to support a union they did not freely choose to join. See Joint Council of Teamsters, No. 42 v. NLRB, 671 F.2d 305, 312 (9th Cir. 1981). As we stated in NLRB v. Forest City/Dillon-Tecon Pacific, 522 F.2d 1107 (9th Cir. 1975):
 
 
 11
 Reimbursement of union initiation fees and dues plays a vital role in remedying coercive union organizing. It promotes the policies of the National Labor Relations Act by assisting in completely disestablishing the illegally constituted union, severing its connection with the employer, restoring freedom of choice to the employee, and encouraging the employee to exercise his rights under the Act.
 
 
 12
 522 F.2d at 1109.
 
 
 13
 The order of the Board is ENFORCED.
 
 
 
 *
 The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation