**A. DARIANO & SONS, INC., a California corporation, Plaintiff–Appellant,**

v.

**DISTRICT COUNCIL OF PAINTERS NO. 33, and Northern California Painters Administrative Fund, Inc., Defendants–Appellees.**

No. 87–2799.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 12, 1988.

Decided March 8, 1989.

Roger M. Mason, Ellen S. Lewis, Thierman, Cook, Brown & Mason, San Jose, Cal., for plaintiff-appellant.

Robert E. Jesinger, Mark S. Renner, Wylie, McBride, Jesinger & Sure, San Jose, Cal., for defendants-appellees.

Before ALDISERT [*], BRUNETTI and LEAVY, Circuit Judges.

ALDISERT, Circuit Judge:

The question arising here is whether a determination by the Regional Director of the National Labor Relations Board ("NLRB" or "the Board") that A. Dariano & Sons, Inc. ("A. Dariano") and Dariano Brothers, Inc. ("Dariano Brothers") were not common, single or joint employers, precluded an arbitrator in a subsequent proceeding from concluding that Dariano Brothers was the alter ego of A. Dariano for the purpose of employee representation. In *Carpenters Local Union No. 1478 v. Stevens*, 743 F.2d 1271 (9th Cir. 1984), *cert. denied*, 471 U.S. 1015, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985) we held that when a Regional Director had determined that two employer entities were neither alter egos nor single employers, the supremacy doctrine precluded a subsequent arbitration proceeding from holding to the contrary. *Id.* at 1278–79 (citing *Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261, 272, 84 S.Ct. 401, 409, 11 L.Ed.2d 320 (1964)). In this case we must decide whether the teaching and holding of *Stevens* apply where the Regional Director decided in favor of the employer on only the single or joint employer doctrine and in *ipsis verbis* did not address the alter ego doctrine. We hold that, under the facts here, the distinction does not make a difference and that the *Stevens* holding applies. The district court held otherwise. The employer has appealed and we now reverse.

Jurisdiction was proper in the district court, 29 U.S.C. § 185 and 28 U.S.C. § 1331. Jurisdiction on appeal is proper, 28 U.S.C. § 1291. The appeal was timely filed under Rule 4(a), F.R.App.P.

### I.

A. Dariano is a painting contractor owned by Anthony Dariano (51%) and Gene Dariano (49%). Employees of A. Dariano have been represented by the District Council of Painters Local 33 (hereinafter "Union") for the past 35 years. Prior to 1984, Gene Dariano worked for A. Dariano as an estimator. Since that time his only association with the company has been his ownership interest.

In 1985, Anthony and Gene jointly purchased assets of J.D.J. Painting Co., a separate entity owned by their brother, John. Assets from this company were transferred to a new corporation, Dariano Brothers, Inc., d/b/a Gene Dariano Painting. There is no evidence in the record that J.D.J. Painting Co. or Dariano Brothers was ever a signatory to a labor agreement with the Union. The capital stock of Dariano Brothers is held in equal shares by Gene and Anthony. Anthony contributed one half of the start-up capital, but other than that has

---

[*] Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

had no involvement in Dariano Brothers. The two companies operate completely independently.

In March 1986, Dariano Brothers was working at Stanford University. In early April, a Union representative complained to Anthony Dariano that employees were performing the Stanford work in violation of A. Dariano's labor agreement. Anthony responded that the Stanford workmen were not A. Dariano employees and therefore were not covered by the agreement. After initial skirmishes, the NLRB Regional Director acted on an employee unit clarification petition. The petition, filed by A. Dariano, requested the NLRB to clarify whether employees of Dariano Brothers were employees of a distinct and separate company and therefore not covered by A. Dariano's labor contract with the Union.

In the NLRB proceedings, as before us, the Union contended that "Dariano Brothers' painting employees constitute[ ] an accretion to the Employer's [A. Dariano's] contractual bargaining unit." *A. Dariano & Sons, Inc. v. District Council of Painters, Local No. 33*, No. 32–UC–179 and 32RM–491, slip op. at 4 (NLRB Sept. 22, 1986) (hereinafter *"Dariano I"*). On September 22, 1986, the Director rejected the Union's interpretation and made the following findings of fact:

> [A]part from the indicium of common ownership, there is no evidence of any common or joint control of the management of the two companies or their labor relations, of any integration of operations, or of any interchange of employees or equipment such that the Employer and Dariano Brothers may be considered a single and/or joint employer. See *Laerco Transportation and Warehouse,* 269 NLRB 324, 325 (1984); *Consolidated Dress Carriers, Inc. et al.,* 259 NLRB 627 (1981). Accordingly, the Union's accretion-based contention that Dariano Brothers' Painting employees should be covered by the Employer's contract with the Union is rejected.

*Dariano I,* at 4–5.

Meanwhile, the Union filed a grievance against A. Dariano which went to arbitration. *One day* after the NLRB decision, on September 23, 1986, an arbitration panel decided that A. Dariano had breached its bargaining agreement with the Union on the theory that Dariano Brothers was the alter ego of A. Dariano:

> 4. Dariano Brothers dba Gene Dariano Painting is the alter ego of the Employer [A. Dariano], and the successor of acquired operation, within the meaning of Article 8, Section 8, 9, and 9(a) of the Collective Bargaining Agreement.
>
> 5. The Employer has violated the Collective Bargaining Agreement, ... by not applying the terms and conditions of the Collective Bargaining Agreement to its alter ego, acquired operation Dariano Brothers....

*A. Dariano & Sons, Inc.,* No. 566, slip op. at 1–2 (Sept. 23, 1986) (Ward, Arb.).

A. Dariano then filed the present action in the United States District Court for the Northern District of California asking that the arbitration award be vacated. The Union requested that the arbitration award be affirmed. Both parties filed cross motions for summary judgment. The court decided in favor of the Union:

> [A. Dariano] must bear the burden of showing that the arbitrator's decision covers the same issue as was decided by the National Labor Relations Board in its decision. Here, the National Labor Relations Board did not decide the same issue which the arbitrator decided, namely, that Dariano Brothers, Inc., was the "alter ego" of A. Dariano & Son, Inc. Therefore, there is no contradiction or conflict between these two decisions. *A. Dariano & Sons, Inc. v. District Council of Painters No. 33,* 681 F.Supp. 649 (N.D.Cal.1987). A. Dariano's appeal followed.

## II.

■ The court's role in reviewing arbitration awards has traditionally been very limited. *See W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber Workers,* 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983). How-

ever, in this case we are asked to decide if the district court's grant of summary judgment was appropriate, rather than whether the decision of the arbitrator was correct, and therefore our review is *de novo*. *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986). In reviewing a grant of summary judgment, evidence is viewed in the light most favorable to the nonmoving party to determine whether there are any genuine issues of material fact and whether the district court correctly applied applicable substantive law. *Ashton v. Cory*, 780 F.2d 816, 818 (9th Cir.1986).

### III.

It is uncontroverted that the supremacy doctrine announced in *Carey*, 375 U.S. 261, 84 S.Ct. 401, establishes that an NLRB decision on a representational issue overrides an arbitrator's decision on the same issue. *Central Valley Typographical Union, No. 46 v. McClatchy Newspapers*, 762 F.2d 741, 747 (9th Cir.1985); *Stevens*, 743 F.2d at 1278; *Cannery Warehousemen, Local Union No. 748 v. Haig Berberian, Inc.*, 623 F.2d 77, 81–82 (9th Cir.1980); *cf. Sheet Metal Workers Int'l Ass'n, Local No. 359 v. Arizona Mechanical & Stainless Inc.*, 863 F.2d 647 (9th Cir.1988) (reconciling the holdings of *Stevens* and *Edna H. Pagel, Inc. v. Teamsters Local Union 595*, 667 F.2d 1275 (9th Cir.1982) based upon the distinction between the NLRB's dismissal of a complaint and the NLRB's action on the merits). As stated in *McClatchy Newspapers*, "two logically inconsistent judgments cannot be enforced when a representational issue is at stake." 762 F.2d at 749. This case involves a representational issue arising out of section 9(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159(b). *Gateway Structures, Inc. v. Carpenters 46 N. Cal. Counties Conference Bd.*, 779 F.2d 485, 488 (9th Cir.1985); *Stevens*, 743 F.2d at 1278; *see Local 3–193, Int'l Woodworkers of Am. v. Ketchikan Pulp Co.*, 611 F.2d 1295, 1298 (9th Cir. 1980). Therefore, if the NLRB in its September 22, 1986 decision, and the arbitrators, in their September 23, 1986 decision, decided the same issue, the NLRB decision is supreme.

### IV.

The underlying issues presented here are not new to this court. They arise from the practice of so-called double-breasted operations, especially prevalent in the construction industry. The conflict between NLRB and arbitrator's decisions is also not new. *See, e.g., Arizona Mechanical & Stainless Inc.*, 863 F.2d at 649; *Warehousemen's Union Local No. 206 v. Continental Can Co.*, 821 F.2d 1348, 1349 (9th Cir.1987); *Stevens*, 743 F.2d at 1273–75.

A double-breasted operation occurs when owners of one company that is a party to a labor agreement, own a second company that is non-union. The non-union company can bid more competitively on jobs that do not require union contractors, while the union company continues to bid on jobs requiring union contractors. This type of operation is not inherently illegal. In particular cases the NLRB has refused either to require the non-union and nonsignatory company to recognize the bargaining representative of the signatory company's employees or to apply the labor agreement to the employees of the non-union, nonsignatory company. *See Stevens*, 743 F.2d at 1275 (collecting cases).

The NLRB has devised two related tests to determine when the practice of double-breasting is lawful: the single employer test (also called the joint or common employer test) and the alter ego test. *Stevens*, 743 F.2d at 1275–76. The next inquiry is to understand the precise distinction between the single employer and alter ego tests as conceptualized by the courts and the NLRB.

### A.

The single employer test is a creation of the Board which allows it to treat two or more related enterprises as one employer within the meaning of section 2(2) of the NLRA, 29 U.S.C. § 152(2). The doctrine was devised so that the Board could combine the amount of business of two or more related business entities so that the whole

would exceed the Board's self-imposed jurisdictional minimum. *See, e.g., Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Serv. of Mobile, Inc.,* 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965) (per curiam). Important for our purposes, the test is also invoked, as in this case, to determine unfair labor practice charges against alleged double-breasted operations. *See, e.g., Radio & Television Broadcast,* 380 U.S. at 256, 85 S.Ct. at 877; *Gateway,* 779 F.2d at 488–89; *Stevens,* 743 F.2d at 1275–76.

█ The Supreme Court has set forth "controlling criteria" to determine whether several nominally separate business entities are to be deemed a single employer. These four criteria are:

interrelation of operations, common management, centralized control of labor relations and common ownership.

*Radio & Television Broadcast,* 380 U.S. at 256, 85 S.Ct. at 877; *see, e.g., Stevens,* 743 F.2d at 1276; *cf. NLRB v. Don Burgess Constr. Corp.,* 596 F.2d 378, 386 (9th Cir.), *cert. denied,* 444 U.S. 940, 100 S.Ct. 293, 62 L.Ed.2d 306 (1979) (establishing that a labor agreement will not bind the employees of two entities found to be a single employer unless the employees of both entities constitute an appropriate bargaining unit).

### B.

The focus of the alter ego test, unlike the single employer test, is on the existence of a disguised continuance of the same business or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or a technical change in operations. *Gateway,* 779 F.2d at 488; *J.M. Tanaka Constr., Inc. v. NLRB,* 675 F.2d 1029 (9th Cir.1982); *NLRB v. Al Bryant, Inc.,* 711 F.2d 543, 553 (3d Cir.1983) (quoting *Carpenters Local Union No. 1846 v. Pratt–Farnsworth, Inc.,* 690 F.2d 489, 508–09 (5th Cir.1982), *cert. denied,* 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983)), *cert. denied,* 464 U.S. 1039, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984). The alter ego considerations commonly arise in successorship situations, when ownership of a signatory changes hands.

If the transfer is bona fide, the successor is not bound by a prior collective bargaining agreement. If the transfer is designed to evade the NLRA by setting up what appears to be a new company, but it is in reality a "disguised continuance" of the old one, the Board will find that the successor company is an alter ego of the old company, and therefore bound by its predecessor's collective bargaining agreement. "[T]he focus of the alter ego doctrine, unlike that of the single employer doctrine, is on the existence of a disguised continuance or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or change in operations." *Pratt–Farnsworth,* 690 F.2d at 508.

The NLRB obviously conceptualizes the alter ego test on the stated or unstated theory of a trustee *ex maleficio* to pierce the changed legal title and format of the successor. It decides that there is a sham or a technical change of title and concludes that, although legal title has passed, for collective bargaining purposes there is one single, solitary, unitary employer—the predecessor, who had been a signatory to the labor agreement.

In deciding whether one company is the alter ego of another, the Board looks at the same criteria considered in the single employer test. These criteria are: common or substantially identical ownership, common management, interrelation of operations, and centralized control of employees. *Gateway,* 779 F.2d at 488; *J.M. Tanaka Constr., Inc.,* 675 F.2d at 1033; *see also Advance Electric, Inc.,* 268 NLRB 1001 (1984); *Fugazy Continental Corp.,* 265 NLRB 1301 (1982), *enf'd.* 725 F.2d 1416 (D.C.Cir.1984); *Crawford Door Sales Co.,* 226 NLRB 1144 (1976). As with the single employer test, however, the Board has also noted that none of these factors taken alone are controlling or prerequisite for a finding of alter ego status, *See Crawford,* 226 NLRB 1144; *O. Voorhees Painting Co.,* 275 NLRB 779 (1985); *Eagle Express,* 273 NLRB 501 (1984).

As stated before, the identical inquiry used to determine whether one entity is the alter ego of another is used to determine

whether one entity is in reality nothing more than part of a single employer operation. This court has consistently held that the "controlling criteria" utilized to determine a single or joint employer are the same factors that must be employed to decide an alter ego case. *Arizona Mechanical,* 863 F.2d at 651; *Stevens,* 743 F.2d at 1275–76; *Gateway Structures,* 779 F.2d at 488–89; *see also Al Bryant, Inc.,* 711 F.2d at 553; *Pratt–Farnsworth,* 690 F.2d at 505.

## V.

From the foregoing precepts, it is apparent that the single employer test is typically invoked when two separate business entities are still functioning and doing business; the alter ego test, when one company purports to close shop and transfer its business to a successor entity through a disguised discontinuance, a sham transaction, or a mere technical change in operations. Under either test, the threshold inquiry is the same. Using the identical "controlling criteria" we ask: is the alleged second business entity under the actual or constructive control of the first company? In all alter ego determinations an element of fraud or misrepresentation also exists.

## A.

By definition, the term alter ego refers to a single entity, defined as "my second self," Cassell's Compact Latin Dictionary (1984), and "another aspect of myself," Websters New World Dictionary of the American Language (2d College Ed.1972). Single is defined as "one only; one and no more." *Id.* Whether in Latin or English, the terms "alter ego" and "single" describe the same thing. By definition, therefore, it is impossible to consider the alter ego doctrine without first considering the concept of a single employer form. It is not alter *is,* alter *ea,* or alter *id* (the other he, she, or it). Aside from definition, however, the commonality of alter ego and single employer is irrefutably emphasized when the same "controlling criteria" are used by the Board to determine whether the two tests are satisfied.

■ Accordingly, it is proper to conclude that in all alter ego determinations there must first be a threshold finding of a single employer of some kind. Stated another way, it is not possible for an agency—private or governmental, executive or judicial—to make a finding of alter ego, if the NLRB has already officially declared no single employer exists. However, it must be emphasized that all findings of a single employer relationship do not necessarily activate the alter ego doctrine. The alter ego doctrine goes further. Using the same "controlling criteria," the doctrine requires a further finding of "disguised continuance" a sham, or a technical change of ownership. However if the NLRB finds that two entities do not constitute a single employer, a subsequent arbitration cannot find the two entities are alter egos.

## B.

We are persuaded that our interpretation coincides precisely with that of the NLRB decision here. The record shows the NLRB found that apart from the indicium of common ownership, "there is no evidence of any common or joint control of the [1] management of the two companies, [2] or their labor relations, [3] of any integration of operations, [4] of any interchange of employees, [5] or equipment." *Dariano I,* at 4–5. Faced with such findings, and following the supremacy doctrine, as a matter of law the alter ego doctrine may not apply.

Further, in the order denying clarification of the order and decision of September 22, 1986, the NLRB District Director explained that having found the absence of a single employer it was not necessary to consider the alter ego doctrine:

> As correctly noted by the Employer in its original post-hearing brief to the Regional Director in these cases, the same factors are considered in evaluating a single employer single [sic] and/or joint employer contention are also considered in assessing a claim that two employers are "alter egos" of one another.

.   .   .   .   .

... to the extent that [Dariano's] petition requests a "motive-free" finding that [A. Dariano] and [Dariano Brothers] are not alter egos of one another, such a determination is highly unnecessary in light of the findings concerning lack of single and/or joint employer status already set forth in that September 22, 1986 Decision and Order.

C.R. 30.

## VI.

This too must be said. At oral argument, the Union suggested that double-breasted operations may implicate a third test, in addition to the single employer and alter ego tests. The Union referred to this as the "acquired operations" test. No persuasive authority was cited for this test and we reject it. This novel concept was but a change in semantics, not in meaning, of the Union's contention before the NLRB that Dariano Brothers' "painting employees constitute an accretion to [A. Dariano's] contracted bargaining unit." We fail to perceive a meaningful distinction between "acquired operations" by the nonunion employees and "an accretion to the workforce" to perform the work in the acquired operations.

## VII.

We have concluded that the failure of the NLRB to discuss the alter ego doctrine does not require a departure from the result reached in *Stevens*. Because of the *Carey* supremacy doctrine, the arbitration panel was compelled to accept the critical findings of the NLRB on the "controlling criteria." An alter ego conclusion of a disguised continuance, a mere technical change in the identity of the employing entity, or a sham transaction, cannot be asserted by mere adjudicatory fiat. There must be a preliminary orderly basis for such a conclusion and it must be based on the Supreme Court's "controlling criteria." These criteria are the same criteria used by the NLRB in its single employer/joint employer analysis. It was impossible as a matter of law for the arbitration panel to establish a contrary factual basis when the factual predicate had already been established by the NLRB in favor of A. Dariano. The operation of the supremacy doctrine precludes the arbitration panel's finding.

## VIII.

The judgment of the district court will be reversed and the proceedings remanded with a direction to enter summary judgment in favor of the employer vacating the arbitration award.

REVERSED AND REMANDED.