945 F.2d 408
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 AUTO MECHANICS LOCAL LODGE NO. 1101, DISTRICT LODGE NO. 93,
INTERNATIONAL ASSOCIATION OF MACHINISTS &
AEROSPACE WORKERS, AFL-CIO,
Petitioner-Cross Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent-Cross Petitioner.
 
 1
 Nos. 90-70096, 90-70141.
 
 
 2
 United States Court of Appeals, Ninth Circuit.
 
 Argued and Submitted April 8, 1991.
Decided Oct. 3, 1991.
 
 3
 Before HUG and POOLE, Circuit Judges, and ATKINS* District Judge.
 
 
 4
 MEMORANDUM**
 
 
 5
 The Auto Mechanics Local Lodge No. 1101, District Lodge No. 93, International Association of Machinists & Aerospace Workers, AFL-CIO (hereafter "the Union"), petitions for review of an order of the National Labor Relations Board (hereafter "NLRB") determining that the Union refused to bargain in good faith in violation of the Labor Management Relations Act § 8(b)(3), 29 U.S.C. § 158(b)(3) (hereafter "the Act"). For the reasons stated below, we affirm.
 
 RELEVANT FACTS
 
 6
 Stevens Pontiac operated a Pontiac car and GMC truck dealership at 620 Blossom Hill Road in Los Gatos, California until late December of 1987. The mechanics and body shop employees (technicians) of Stevens Pontiac had been represented by the Union for a number of years pursuant to a series of collective bargaining agreements. The most recent of which covered the period from October 16, 1986 to November 4, 1989. Other employees were represented by the Teamsters. Ted Stevens, the president and owner of all the stock of Stevens Pontiac managed the business on a day-to-day basis. John Dees and Grant Bishop, the vice-presidents did not own stock and were not active in the day-to-day operations of Stevens Pontiac. Chuck Elwood, the service manager was in charge of labor relations involving the technicians. Arnold Fried was the parts department manager; Rick Montgomery was the body shop manager; and Anthony Alexander was the sales manager.
 
 
 7
 A decision to close down Stevens Pontiac was made on approximately December 31, 1987 because the car dealership was losing money. Apparently, a new Pontiac dealership had opened several miles away in direct competition. Stevens Pontiac sold the Pontiac and GMC truck franchises, the stock of new Pontiacs and GMC trucks and the inventory of car and truck parts and specialized tools and repair equipment to Moore, Buick, a dealership located about a half mile away. All the employees of Stevens Pontiac were terminated and paid in full for accrued wages and vacation and/or sick leave benefits. While Stevens Pontiac still exists as an entity, it has surrendered its dealer's license and is no longer engaged in the sale or service of vehicles.
 
 
 8
 Los Gatos Acura was incorporated in September of 1987 and commenced the operations of its Acura new car sales and service used car sales business on January 8, 1988 at the same location formerly occupied by Stevens Pontiac. John Dees, the former vice-president of Stevens Pontiac, owns 25 percent of the stock of Los Gatos Acura, is the dealer of record, president of the corporation and also manages the business on a day-to-day basis. Grant Bishop, former vice-president of Stevens Pontiac, owns 25 percent of Los Gatos Acura's stock, is corporate secretary, but is not involved in the day-to-day operations. Ted Stevens, former owner and president of Stevens Pontiac, is the vice-president of Los Gatos Acura and owns the remaining 50 percent of the business. While Ted Stevens is occasionally consulted on problems, he is not as active in Los Gatos Acura's business as he was with Stevens Pontiac.
 
 
 9
 Tony Alexander, the former sales manager at Stevens Pontiac, was hired as the general manager of Los Gatos Acura in December of 1987. Alexander was responsible for all the labor relations and did all of the employee interviewing and hiring for Los Gatos Acura. Some of the technician applicants, however, were also interviewed by service department manager Mark Bergthold, who had not formerly been employed by Stevens Pontiac. Approximately 13 technician employees were hired. However, even though Alexander placed an add for applicants in the San Jose Mercury Newspaper, all but two of the applicants hired were formerly employed with Stevens Pontiac. Although medical benefits are the same for all employees, wages and other benefits were negotiated on a case-by-case basis between Alexander and the applicants.
 
 
 10
 Los Gatos Acura obtained all of its new cars, parts and special tools from American Honda Motor Company. Stevens Pontiac obtained those items from General Motors Corporation. Los Gatos Acura has not completed any service work commenced by Stevens Pontiac nor has honored any Pontiac or GMC warranties. The premises on Blossom Hill Road are leased to Stevens Pontiac, which in turn has subleased it to Los Gatos Acura. The rent paid by Los Gatos Acura is double the rent that Stevens Pontiac paid because of leasehold improvements, immovable fixtures and office equipment rental. The two entities have separate bank accounts and there has been no intermingling of funds between the two entities.
 
 
 11
 On January 26, 1988, apparently, in response to a letter from the Union, Alexander, the general manager of Los Gatos Acura, wrote the Union acknowledging that Los Gatos Acura was a successor to Stevens Pontiac and offering to bargain with it with respect to the mechanics and body shop employees. A series of letters and meetings followed between both counsel for the Union and counsel for Los Gatos Acura, who is also counsel for Stevens Pontiac. The Union maintained that the two entities were alter egos[1], that Los Gatos Acura was created to circumvent the provisions of the collective bargaining agreement between it and Stevens Pontiac, and that the agreement was applicable to Los Gatos employees. There was a demand to arbitrate the issue, which was declined by Los Gatos Acura.
 
 
 12
 Los Gatos Acura filed unfair labor practice charges against the Union on August 30, 1988, alleging that the Union had a duty to bargain with Los Gatos Acura because the latter was a successor employer to Stevens Pontiac and not an alter ego of Stevens Pontiac. On the same date, the Union filed a § 301 action in federal court alleging that Los Gatos Acura was the alter ego of Stevens Pontiac and thus bound by the contract between Stevens Pontiac and the Union.[2] On October 4, 1988, Region 32 of the NLRB issued a complaint against the Union based on the August 30, 1991 charge filed by Los Gatos Acura. The matter was tried before an administrative law judge (hereafter "ALJ") of the NLRB. On March 29, 1989, the ALJ issued a decision finding the Union in violation of the Act and that Los Gatos Acura was not the alter ego of Stevens Pontiac. The Union appealed the ALJ's decision, based on the theory that the ALJ should not have decided the alter ego issue. On September 15, 1989, the NLRB affirmed the ALJ's decision. The Union timely petitions for review.
 
 DISCUSSION
 
 13
 The Union raises several contentions to the NLRB's authority to decide whether Los Gatos Acura is the alter ego of Stevens Pontiac. These contentions are addressed in turn.
 
 The § 301 District Court Action[3]
 
 14
 The Union first asserts that the NLRB erroneously relied on the Union's pursuit of a § 301 action in the federal district court, an entirely separate adjudicative proceeding, in determining that the Union refused to bargain with Los Gatos Acura in good faith. This contention is completely without merit.
 
 
 15
 The complaint issued by the NLRB only indicated that the Union was charged under § 8(b)(3) of the Act because it refused to bargain with Los Gatos Acura. The Union was not charged with a violation of § 8(b)(3) of the Act based on the filing of the § 301 suit filed in the district court. The issue was clearly not before the NLRB.
 
 
 16
 The record is also clear that both the ALJ and the NLRB refused to enjoin the Union's § 301 lawsuit in the district court. Both recognized that the district court was an entirely separate adjudicative forum. The ALJ specifically found that:
 
 
 17
 [t]he complaint [did] not allege filing the Section 301 suit constitutes an unfair labor practice. For that reason and for reasons expressed by the board in the following cases, the General Counsel's request that the Union be ordered to withdraw the Section 301 suit is denied[.] (citations omitted)
 
 
 18
 In addition, the NLRB upheld the ALJ's ruling not to order withdrawal of the § 301 lawsuit and indicated that the filings in that case are not part of the record before it. However, the NLRB did warn that "continued maintenance of that lawsuit would be inconsistent with [its] determination ... that the Charging Party, Los Gatos Acura, is not an alter ego of Stevens Pontiac." Clearly, that issue was not before the ALJ or the NLRB. There was no adverse inference or erroneous reliance raised from the Union's pursuit of a § 301 suit in district court.
 
 The Alter Ego Issue
 
 19
 The Union also contends that the NLRB's determination of the alter ego issue represents an unnecessary expansion of the matters before the NLRB. Finding that the alter ego issue was central to a determination of the refusal to bargain charge against the Union, we find that the ALJ and the NLRB properly reached and decided the alter ego issue.
 
 
 20
 "The NLRB and the district courts share concurrent jurisdiction over disputes involving both allegations of unfair labor practices and violations of a collective bargaining agreement." Nelson v. IBEW Local Union No. 46, 899 F.2d 1557, 1563 (9th Cir.1990) (citations omitted). In determining which forum should exercise primary jurisdiction, there are several considerations that apply. Customarily, the district court has primary jurisdiction over section 301 labor disputes involving primarily a question of contract interpretation. Id. at 1564. The NLRB has primary jurisdiction to construe the Act and "determine what is or is not an unfair labor practice." Id. at 1564 (quoting Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 83 (1982)). "This division of responsibility is due primarily to the judiciary's historical deference to specialized agencies in complex policy matters under the agencies' purview." Id.
 
 
 21
 After careful consideration of the various factors, we conclude that the primary jurisdiction of the NLRB to decide the alter ego issue should be upheld under the circumstances of this case. The issue of whether the Union was obligated to bargain with Los Gatos Acura was before both the NLRB and the district court. In order to reach this issue, it was first necessary for the NLRB to determine the bargaining rights and obligations of both parties. Contrary to the Union's contention, the alter ego issue was central to a determination of the refusal to bargain charge against the Union.
 
 
 22
 If Los Gatos Acura was only a successor employer to Stevens Pontiac, Los Gatos Acura is only obligated to recognize and bargain with the pre-existing union and is not automatically obliged to accept the terms of its predecessor's agreement with the Union. NLRB v. Burns International Security Services, 406 U.S. 272, 277-296 (1972); Local No. 359 v. Arizona Mechanical and Stainless, 863 F.2d 647, 651 (9th Cir.1988). Therefore, as a successor employer, Los Gatos Acura and the Union would have an obligation to bargain over the terms and conditions of employment. Burns International, 406 U.S. at 295-296. If, however, Los Gatos was the alter ego of Stevens Pontiac, as the Union contended, Los Gatos Acura would be bound by the terms of any collective bargaining agreement between the Union's designated bargaining representative and Stevens Pontiac. A. Dariano & Son, Inc. v. District Council of Painters No. 33, 869 F.2d 514, 518 (9th Cir.1989). Thus, if Los Gatos Acura was the alter ego of Stevens Pontiac, the Union would have no duty to bargain with Los Gatos Acura. Id.
 
 
 23
 The Union's position at the administrative hearing was that it was willing and able to bargain with Los Gatos Acura as a successor employer. Yet, the Union maintained a simultaneous action in the federal district court alleging that Los Gatos Acura was an alter ego of Stevens Pontiac and was subject to the collective bargaining agreement already established by Stevens Pontiac and the Union. Basically, the Union in the § 301 action alleged that it had no duty to bargain with Los Gatos Acura, thus contradicting its position in the NLRB's action that it planned to bargain in good faith with Los Gatos Acura. These issues in the actions before the NLRB and the district court are so "inextricably linked" that the NLRB was within its primary jurisdiction in determining the alter ego issue. See Nelson, 899 F.2d at 1564.
 
 
 24
 Notice of the Alter Ego Issue in the Complaint
 
 
 25
 The Union contends that it was denied due process because there was no mention of the alter ego issue in the NLRB's complaint or pleadings. Therefore, the Union takes the position that it was given insufficient notice that the issue would be litigated in the unfair labor practice proceedings. We disagree.
 
 
 26
 The precedent in this circuit is clear that "[a]ctions before the [NLRB] are not subject to the technical pleading requirements that govern private lawsuits." Teamsters Cannery Local 670 v. NLRB, 856 F.2d 1250, 1258 (9th Cir.1988) (quoting NLRB v. Carilli, 648 F.2d 1206, 1210 (9th Cir.1981)). The charge does not have to be technically precise as long as it generally informs the party charged of the nature of the alleged violations. Teamsters Cannery Local 670, 856 F.2d at 1258. Moreover, the NLRB may find an unfair labor practice even though no specific charge is made in the complaint where the issue is fully and fairly litigated at the administrative hearing. Id.
 
 
 27
 The complaint before the NLRB alleged that the Union failed and refused to bargain collectively with Los Gatos Acura, the successor employer to Stevens Pontiac. The charge, while not specifically indicating the alter ego theory, generally informed the Union that the issue would be litigated. As discussed above, the alter ego was central to the determination of whether the Union refused to bargain in bad faith. The record was clear that the Union had repeatedly asserted prior to the hearing that Los Gatos Acura was an alter ego of Stevens Pontiac. Because the complaint alleged the Union's failure to bargain and because the evidence concerning the Union's bargaining conduct consisted primarily of the Union's own letters in which it made assertions that Los Gatos Acura was an alter ego, the Union should not be allowed to allege "surprise at the specific factual contentions brought forth at the hearing." See Industrial Technical and Professional Employees Division, National Maritime Union of America, AFL-CIO, 683 F.2d 305, 307-308 (9th Cir.1982).
 
 
 28
 Finding that the Union had sufficient notice that the alter ego issue was to be raised in the proceedings before the NLRB, we also find that the issue was fairly and fully litigated. The Union had the opportunity to produce its own evidence and also had the opportunity to object to the numerous exhibits and witnesses who were subject to direct and cross examination. Instead, the Union made a standing objection to evidence supporting the alter ego issue produced by the other side, . Cf. id. at 307, 308 (court held that the issue was fully litigated where the Union attorney failed to object to the introduction of the vast majority of evidence).
 
 
 29
 Substantial Evidence to Support the NLRB's Conclusions
 
 
 30
 Finally, the Union contends that the NLRB's order contained conclusions of law not supported by substantial evidence in the record. This contention also lacks merit.
 
 
 31
 The record is clear that Los Gatos Acura is a successor of Stevens Pontiac. Los Gatos Acura concedes that it is a successor employer to Stevens Pontiac and that it has consistently offered to bargain with the Union. In fact, the Union admitted before this panel that Los Gatos Acura was a successor employer to Stevens Pontiac. The NLRB correctly found that Los Gatos Acura is obliged to recognize and bargain with the Union.
 
 
 32
 The NLRB also correctly applied the legal principles of the alter ego theory to the relevant facts of this case. In determining whether an entity is an alter ego of another business, "a court must consider the following factors: (1) centralized control of labor relations, (2) common management, (3) interrelation of operations, and (4) common ownership and financial control." J.M. Tanka Construction, Inc. v. NLRB, 675 F.2d 1029, 1033 (9th Cir.1982) (citations omitted). The NLRB also considers whether the purpose behind the creation of the new business was legitimate or whether, instead, the purpose was to evade responsibilities under the Act. A. Dariano & Son, Inc., 869 F.2d at 518.
 
 
 33
 Applying the above considerations, substantial evidence on the record supports the NLRB's conclusions. There was substantial evidence that Stevens Pontiac and Los Gatos Acura are independent legal entities. The management, ownership and supervision at Los Gatos Acura was substantially different from that of Stevens Pontiac. Ted Stevens owned 100 percent of Stevens Pontiac stock and ran the day-to-day business, whereas Dees and Bishop run the day-to-day business at Los Gatos Acura and each own 25 percent of Los Gatos Acura's stock. Dees and Bishop did not own any interest in Stevens Pontiac nor were they active in the operations of the Pontiac dealership. The supervision is also substantially different. Elwood was Stevens Pontiac's service manager and in charge of labor relations involving technicians. Bergthold has replaced him as service manager at Los Gatos Acura and Alexander, the sales manager for Stevens Pontiac, became Los Gatos Acura's general manager and in charge of its labor relations. Therefore, at least two of the four department managers are different from those employed by Stevens Pontiac.
 
 
 34
 Substantial evidence in the record also supports the NLRB's conclusion that the business purpose behind the creation of the new business was legitimate. The evidence establishes that Los Gatos Acura was created to deal in a new line of vehicles and Stevens Pontiac was closed for legitimate business considerations. A new Pontiac dealership had opened a few miles away and Stevens Pontiac was losing money. While, Los Gatos Acura operates out of the same location, it is not licensed to sell, or equipped to service any of the General Motors products sold and/or serviced by Stevens Pontiac. Los Gatos Acura is only in business to sell Acura cars which it acquires from American Honda Company. Based on the substantial evidence in the record that the two entities were separate, it is clear that Los Gatos Acura is not the alter ego of Stevens Pontiac.
 
 CONCLUSION
 
 35
 Based on the discussion above, WE AFFIRM the NLRB's decision and order.
 
 
 
 *
 Honorable C. Clyde Atkins, Senior United States District Judge for the Southern District of Florida, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 An employer may not evade its collective bargaining agreement through a sham transaction or a technical change in operations, or deprive its employees of their rights under the Act, by forming what appears to be a new business entity but what is in fact a "disguised continuance" or alter ego of the old employing entity. A. Dariano & Sons v. District Council No. 33, 869 F.2d 514, 518 (9th Cir.1989)
 
 
 [2]
 On December 19, 1989, the district court determined taht the ruling of the NLRB with respect to the issue of the alter ego status of Los Gatos Acura precluded litigation of that issue in the district court. That issue is before this panel in a companion appeal entitled International Association of Machinists and Aerospace workers, District Lodge No. 93 v. Stevens-Pontiac, et al., No. 90-15133
 
 
 [3]
 Section 301 of the Labor Management Relations Act provides in pertinent part as follows: "Suits for violation of contracts between an employer and a labor organization ... may be brought in any district court of the United States having jurisdiction of the parties 29 U.S.C. § 185