945 F.2d 409
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE
WORKERS, DISTRICT LODGE NO. 93, Plaintiff/Appellant,
v.
STEVENS PONTIAC-GMC-HONDA, INC., dba Stevens Pontiac-GMC,
Theodore J. Stevens, Grant R. Bishop, La Rinconada
Securities, Inc., dba Los Gatos Acura,
Defendants/Appellees.
 No. 90-15133.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 8, 1991.
Decided Oct. 3, 1991.
 
 1
 Before HUG and POOLE, Circuit Judges, and ATKINS* District Judge.
 
 
 2
 MEMORANDUM*
 
 
 3
 The International Association of Machinists and Aerospace Works District Lodge No. 93 (hereafter "the Union"), appeals the district court's dismissal of its breach of contract claim under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The dismissal was based on the determination that the decision by the National Labor Relations Board (hereafter "NLRB"), in an entirely separate proceeding, precluded litigation of the alter ego status of Los Gatos Acura. Because we find that the district court properly applied the doctrine of collateral estoppel to foreclose relitigation of the alter ego issue and also that the NLRB decision fully complies with the requirements of due process, WE AFFIRM.
 
 RELEVANT FACTS
 
 4
 Stevens Pontiac operated a Pontiac car and GMC truck dealership at 620 Blossom Hill Road in Los Gatos, California until late December of 1987. The mechanics and body shop employees (technicians) of Stevens Pontiac had been represented by the Union for a number of years pursuant to a series of collective bargaining agreements. The most recent of which covered the period from October 16, 1986 to November 4, 1989. Other employees were represented by the Teamsters. Ted Stevens, the president and owner of all the stock of Stevens Pontiac managed the business on a day-to-day basis. John Dees and Grant Bishop, the vice-presidents did not own stock and were not active in the day-to-day operations of Stevens Pontiac. Chuck Elwood, the service manager was in charge of labor relations involving the technicians. Arnold Fried was the parts department manager; Rick Montgomery was the body shop manager; and Anthony Alexander was the sales manager.
 
 
 5
 A decision to close down Stevens Pontiac was made on approximately December 31, 1987 because the car dealership was losing money. Apparently, a new Pontiac dealership had opened several miles away in direct competition. Stevens Pontiac sold the Pontiac and GMC truck franchises, the stock of new Pontiacs and GMC trucks and the inventory of car and truck parts and specialized tools and repair equipment to Moore, Buick, a dealership located about a half mile away. All the employees of Stevens Pontiac were terminated and paid in full for accrued wages and vacation and/or sick leave benefits. While Stevens Pontiac still exists as an entity, it has surrendered its dealer's license and is no longer engaged in the sale or service of vehicles.
 
 
 6
 Los Gatos Acura was incorporated in September of 1987 and commenced the operations of its Acura new car sales and service used car sales business on January 8, 1988 at the same location formerly occupied by Stevens Pontiac. John Dees, the former vice-president of Stevens Pontiac, owns 25 percent of the stock of Los Gatos Acura, is the dealer of record, president of the corporation and also manages the business on a day-to-day basis. Grant Bishop, former vice-president of Stevens Pontiac, owns 25 percent of Los Gatos Acura's stock, is corporate secretary, but is not involved in the day-to-day operations. Ted Stevens, former owner and president of Stevens Pontiac, is the vice-president of Los Gatos Acura and owns the remaining 50 percent of the business. While Ted Stevens is occasionally consulted on problems, he is not as active in Los Gatos Acura's business as he was with Stevens Pontiac.
 
 
 7
 Tony Alexander, the former sales manager at Stevens Pontiac, was hired as the general manager of Los Gatos Acura in December of 1987. Alexander was responsible for all the labor relations and did all of the employee interviewing and hiring for Los Gatos Acura. Some of the technician applicants, however, were also interviewed by service department manager Mark Bergthold, who had not formerly been employed by Stevens Pontiac. Approximately 13 technician employees were hired. However, even though Alexander placed an add for applicants in the San Jose Mercury Newspaper, all but two of the applicants hired were formerly employed with Stevens Pontiac. Although medical benefits are the same for all employees, wages and other benefits were negotiated on a case-by-case basis between Alexander and the applicants.
 
 
 8
 Los Gatos Acura obtained all of its new cars, parts and special tools from American Honda Motor Company. Stevens Pontiac obtained those items from General Motors Corporation. Los Gatos Acura has not completed any service work commenced by Stevens Pontiac nor has honored any Pontiac or GMC warranties. The premises on Blossom Hill Road are leased to Stevens Pontiac, which in turn has subleased it to Los Gatos Acura. The rent paid by Los Gatos Acura is double the rent that Stevens Pontiac paid because of leasehold improvements, immovable fixtures and office equipment rental. The two entities have separate bank accounts and there has been no intermingling of funds between the two entities.
 
 
 9
 On January 26, 1988, apparently, in response to a letter from the Union, Alexander, the general manager of Los Gatos Acura, wrote the Union acknowledging that Los Gatos Acura was a successor to Stevens Pontiac and offering to bargain with it with respect to the mechanics and body shop employees. A series of letters and meetings followed between both counsel for the Union and counsel for Los Gatos Acura, who is also counsel for Stevens Pontiac. The Union maintained that the two entities were alter egos[1], that Los Gatos Acura was created to circumvent the provisions of the collective bargaining agreement between it and Stevens Pontiac, and that the agreement was applicable to Los Gatos employees. There was a demand to arbitrate the issue, which was declined by Los Gatos Acura.
 
 
 10
 On August 30, 1988, the same day the Union filed the § 301 action that forms this appeal, Los Gatos Acura filed unfair labor practice charges against the Union, alleging that the Union had a duty to bargain with Los Gatos Acura because the latter was a successor employer to Stevens Pontiac and not an alter ego of Stevens Pontiac. The unfair labor practice charges were tried before an administrative law judge (hereafter "ALJ") of the NLRB. On March 29, 1989, the ALJ issued a decision finding the Union in violation of the Act and that Los Gatos Acura was not the alter ego of Stevens Pontiac. The NLRB affirmed the ALJ's decision. The Union filed a separate appeal from the NLRB's decision and order on the theory that the ALJ should not have decided the alter ego issue. That issue is before this panel in a companion appeal entitled Auto Mechanics Local Lodge No. 1101, District Lodge No. 93, International Association of Machinists and Aerospace Workers, AFL-CIO v. NLRB, Nos. 90-70096 and 90-70141.
 
 
 11
 In a separate action filed on August 30, 1988, in United States District Court, the Union sought declaratory, injunctive and monetary relief for breach of a labor-management contract pursuant to section 301 of the Labor-Management Relations Act. 29 U.S.C. § 185(a). The Union's complaint alleged, inter alia, that Los Gatos Acura was the alter ego of Stevens Pontiac. The district court granted the Union's motion for summary judgment on its petition to compel arbitration. In addition, the district judge in the § 301 action ruled on December 19, 1989, that the decision of the NLRB in the unfair labor practices action on the alter ego issue precluded relitigation of that issue in the § 301 action then before the court. The Union now appeals from that decision of the district court. The Union filed a timely notice of appeal pursuant to 28 U.S.C. § 2107.
 
 DISCUSSION
 
 12
 The Union first contends the district court erroneously gave collateral estoppel effect to the conclusion of the NLRB that Los Gatos Acura was not the alter ego of Stevens Pontiac. We find that the district court properly applied the doctrine of collateral estoppel to foreclose relitigation of the alter ego issue.
 
 
 13
 The law is clear that a party is foreclosed from relitigating in federal court those issues that were material to a proceeding before the NLRB and resulted in a final order of the NLRB. Paramount Transportation Systems v. Chaffeuers, Teamsters & Helpers, Local 150, 436 F.2d 1064, 1065 (9th Cir.1971). While there is no dispute that the action by the NLRB resulted in a final order, the Union disputes the NLRB's conclusion that the alter ego issue was material to the proceeding before the NLRB. The Union was not successful in persuading the NLRB previously and does not persuade this court to adopt this position now.
 
 
 14
 In the proceedings before the NLRB, the NLRB was faced with the issue of whether the Union was in violation of the Act by failing to bargain with Los Gatos Acura. Therefore, the bargaining rights and obligations of both the Union and Los Gatos Acura were the critical factors. In determining whether the Union was in violation of its duty to bargain, the NLRB had to first determine if the Union had a duty to bargain. This inquiry turns on the critical issue of whether Los Gatos Acura was the "alter ego" of Stevens Pontiac or was merely a "successor."
 
 
 15
 If Los Gatos Acura was the alter ego of Stevens Pontiac, as the Union alleges, the Union would have no duty to bargain. Crawford Door Sales Company v. NLRB, 226 N.L.R.B. 1144 (1976). However, if Los Gatos Acura was merely a successor to Stevens Pontiac, the Employer and Union both had a duty to bargain over the terms and conditions of the contract. NLRB v. Burns International Detective Agency, Inc., 406 U.S. 272 (1972). Therefore, under the circumstances presented in this case, the alter ego theory was material and critical to the issues before the Board.[2]
 
 
 16
 The Union's next assertion argues that their due process rights were violated when the NLRB decided the alter ego issue which was not technically pleaded in the complaint before the NLRB. Generally, due process in the circumstances raised here require that a person be informed of the basis of the complaint and given a fair opportunity to meet the complaint. NLRB v. Complas Industries, 714 F.2d 729, 733 (7th Cir.1983). This contention is without merit where the omission of a claim from the pleadings does not automatically preclude the NLRB from reaching the issue.
 
 
 17
 The precedent in this circuit is clear that "[a]ctions before the [NLRB] are not subject to the technical pleading requirements that govern private lawsuits." Teamsters Cannery Local 670 v. NLRB, 856 F.2d 1250, 1258 (9th Cir.1988) (quoting NLRB v. Carilli, 648 F.2d 1206, 1210 (9th Cir.1981)). The charge does not have to be technically precise as long as it generally informs the party charged of the nature of the alleged violations. Teamsters Cannery Local 670, 856 F.2d at 1258. Moreover, the NLRB may find an unfair labor practice even though no specific charge is made in the complaint where the issue is fully and fairly litigated at the administrative hearing. Id.
 
 
 18
 The complaint before the NLRB alleged that the Union failed and refused to bargain collectively with Los Gatos Acura, the successor employer to Stevens Pontiac. The charge, while not specifically indicating the alter ego theory, generally informed the Union that the issue would be litigated. As discussed above, the alter ego was central to the determination of whether the Union refused to bargain in bad faith. The record was clear that the Union had repeatedly asserted prior to the hearing that Los Gatos Acura was an alter ego of Stevens Pontiac.
 
 
 19
 The record from the NLRB hearing evidences that the General Counsel introduced some 14 exhibits and called witnesses on the alter ego issue. Instead of challenging this issue or introducing evidence of its own, the Union just made a general objection to the introduction of any evidence on the alter ego issue. The Union had ample opportunity to litigate this issue and refused. Under these circumstances, we find that the Union's due process rights were not violated.
 
 
 20
 Important public policy considerations of avoiding costs, vexation of multiple law suits, conservation of judicial resources, preventing inconsistent decisions, and encouraging reliance on adjudication, also support our holdings in this case. See Allen v. McCurry, 449 U.S. 90, 94 (1980); Brown v. Felsen, 442 U.S. 127, 131 (1979). If collateral estoppel effect had not been given the Board's decision and order, the parties would have been required to call the same witnesses, adduce the same evidence and make the same arguments as were heard by the NLRB.
 
 CONCLUSION
 
 21
 The district court properly accorded collateral estoppel effect to the determination of the Board that Los Gatos Acura was not the alter ego of Steven Pontiac-GMC. The Board had jurisdiction over the issue which was material to the Board's resolution of the unfair labor practice charge. The proceedings comported with the requirements of due process. The order of the district court should be AFFIRMED.
 
 
 
 *
 Honorable C. Clyde Atkins, Senior United States District Judge for the Southern District of Florida, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 An employer may not evade its collective bargaining agreement through a sham transaction or a technical change in operations, or deprive its employees of their rights under the Act, by forming what appears to be a new business entity but what is in fact a "disguised continuance" or alter ego of the old employing entity. A. Dariano & Sons v. District Council No. 33, 869 F.2d 514, 518 (9th Cir.1989)
 
 
 [2]
 This memorandum does not take the position that in every circumstance the alter ego status is relevant to whether a successor employer status exists. The particular issues before the court will determine depth of the inquiry