The Honorable STEPHEN V. WILSON, U.S. DISTRICT JUDGE
Tutor Perini Building Corp. ("Tutor Perini") brings this action against Southern California District Council of Laborers ("SCDCL") and Plaster Tenderers of Southern California Local Union 1414 *1314 ("Local 1414" and, collectively with SCDCL, "Laborers") to vacate an arbitration award. Tutor Perini and Laborers agreed to arbitrate a grievance from Laborers over Tutor Perini's violation of a subcontracting provision in a collective bargaining agreement between the parties. In the arbitration, Tutor Perini agreed to have the arbitrator decide the question of the arbitrator's own jurisdiction to hear Laborers' grievance. The arbitrator determined that he had jurisdiction and ruled in favor of Laborers on the substantive grievance, awarding damages to Laborers for Tutor Perini's subcontracting violation. For the reasons set forth below, the Court must uphold the arbitrator's award under the broad deference afforded to an arbitrator's substantive determinations.
In this litigation, Tutor Perini raises additional arguments for why the arbitrator's decision is invalid-namely, that the arbitrator's ruling is inconsistent with a prior proceeding in front of the National Labor Relations Board (the "NLRB" or the "Board"). As part of this argument, Tutor Perini asserted before the arbitrator and repeats before this Court that it is caught in a quandary between two competing collective bargaining agreements it signed, one with Laborers and one with Southwest Regional Council of Carpenters and Local Unions in the Twelve Southern California Counties and Nevada Affiliated with the United Brotherhood of Carpenters and Joiners of America ("Carpenters"). However, as explained below, Tutor Perini's arguments mischaracterize the dilemma it faces regarding its obligations to both Carpenters and Laborers, and Tutor Perini misunderstands the scope of the prior proceedings in front of the Board upon which it relies.
I. Factual Background
The parties have stipulated to the pertinent facts in this case. See Dkt. 21. Tutor Perini is an Arizona corporation and conducts business in California, including Los Angeles County. Tutor Perini served as the general contractor for the Pechanga Hotel Expansion Project (the "Project") in Temecula, California.
A. The Collective Bargaining Agreements
Tutor Perini entered into collective bargaining agreements with two competing unions covering similar types of work. The first collective bargaining agreement is between Tutor Perini and SCDCL and its affiliated labor unions, including Local 1414 (the "Laborers CBA"). The operative document comprising the Laborers CBA and signed by both Tutor Perini and Laborers is the Laborers' Short-Form Agreement for the Construction Industry, Dkt. 21 Ex. 3 (the "Short-Form Agreement"), which incorporates by reference the multi-employer Construction Master Labor Agreements for the Eleven Southern California Counties and for San Diego County, including the Southern California Master Labor Agreement between Southern California General Contractors and SCDCL, Dkt. 21 Ex. 4 (the "MLA"), and the Plaster Tenders' Master Agreement between Western Wall and Ceiling Contractors Association, Inc., SCDCL and Local 1414, Dkt. 21 Ex. 5 (the "MPA").
The Short-Form Agreement states that contractors shall not "assign work covered by the Master Labor Agreements to employees represented by any other union." Id. Ex. 3, Art. II § C. The MLA similarly requires a contractor such as Tutor Perini, and its subcontractors, to subcontract work falling under Laborers' jurisdiction only to workers that are a party to a labor agreement with Laborers. Id. Ex. 4, Art. V § C. Subcontractors are defined in the MLA as "any person (other than an employee *1315 covered by this Agreement), firm or corporation" who agrees to subcontract certain work for a general contractor. Dkt. 21 Ex. 4, Art. V § B. Covered work under the MLA includes "[a]ll work necessary to tend all other building trades craftsmen," id. Art. I § F.1, and all work performed by plaster tenders, id. Art. I § I. The term "Plaster Tenders," in turn, is defined in the MPA to mean workers "serving plasterers in any capacity," and plaster tenders are specifically tasked with "tend[ing] [to] the plasterer in performing all ... fireproofing." Id. Ex. 5, Art. XV § B.
The Laborers CBA sets forth grievance and arbitration procedures between the parties for all disputes. The Short-Form Agreement, which adjusts the grievance process set forth in the MLA, requires arbitration of all grievances or disputes between Tutor Perini and Laborers, including jurisdictional disputes and misassignments of work. Id. Ex. 3, Art. III § A.[1] The Short-Form Agreement gives the arbitrator authority to issue a final and binding decision regarding the dispute, and in the event of a misassignment of work or subcontracting violation, the arbitrator is directed to issue an injunction to prevent continuing or future violations and shall award damages to Laborers equivalent to the lost wages of its members based on the employer's wrongful failure to hire those members for the contracting work at issue. Id. Ex. 3, Art. III § B.
Tutor Perini is also a signatory to a second collective bargaining agreement with Carpenters. The relevant provision of the collective bargaining agreement between Tutor Perini and Carpenters (the "Carpenters CBA") governing the scope of covered work is Section 105.1.1, which states that Carpenters members are entitled to perform all drywall work, including "all work in connection with the installation ... of all materials and component parts of wall and partitions ... including but not limited to ... fireproofing of beams and columns, fire proofing of chase, sound and thermal insulation materials ... and all other necessary or related work in connection therewith." Dkt. 21 Ex. G, § 105.1.1. Per Section 503 of the Carpenters CBA, Tutor Perini, or any of its subcontractors, shall not "subcontract any work to be done at the site of construction ... coming within the jurisdiction of the Carpenters except to a person, firm or corporation party to an appropriate current labor agreement with the Southwest Regional Council of Carpenters." Id. § 503.
Based on the language of each agreement, there is a clear potential for overlap between the Laborers CBA and the Carpenters CBA regarding plaster tendering work-which the Court herein will refer to as "fireproofing support work." On the one hand, the Laborers CBA claims a right to work that "serves plasterers in any capacity," which includes tending to plasterers that perform fireproofing. On the other hand, the Carpenters CBA claims a right to "all other necessary or related work in connection" with fireproofing, which plausibly covers the same plaster tendering work in support of the fireproofing craftsmen.
The presence of conflict over fireproofing support work presents a significant problem for Tutor Perini. As the general contractor, Tutor Perini is obligated to ensure that it subcontracts work covered by each union's collective bargaining agreement to a signatory with that agreement, *1316 so that the respective union's employees are guaranteed to receive the covered work. But when it is unclear which union's agreement should cover disputed work, Tutor Perini could theoretically face scrutiny for its subcontracting decision from whichever union was not assigned the disputed work by the subcontractor.
Nevertheless, Tutor Perini's problem is diminished by the fact that the collective bargaining agreements are not in conflict regarding the actual fireproofing work itself. Carpenters expressly claims jurisdiction over fireproofing, while Laborers only claims work in support of craftsmen and disclaims jurisdiction over the work to be performed by the craftsmen themselves. Thus, the only potential jurisdictional question in this case is which union would perform the ancillary work in support of the fireproofing craftsmen if both the Laborers CBA and the Carpenters CBA were applicable to the same employer. Accordingly, when hiring a fireproofing subcontractor, Tutor Perini is always obligated under the Carpenters CBA to select a subcontractor that is a signatory to an agreement with Carpenters, so that Carpenters-represented employees are assigned the actual fireproofing work. On the other hand, Tutor Perini will never be required to select a fireproofing subcontractor that is only a signatory with Laborers, because Laborers would not be entitled to the actual fireproofing work under the terms of the Laborers CBA.[2]
Therefore, the essence of Tutor Perini's true dilemma between the two collective bargaining agreements is whether it should (1) hire a fireproofing subcontractor that is only a Carpenters signatory so that the subcontractor assigns the fireproofing support work to Carpenters-represented employees, or (2) hire a fireproofing subcontractor that is both a Carpenters signatory and a Laborers signatory so that the subcontractor may assign the fireproofing support work to Laborers instead. If the two unions make competing claims to the subcontractor for the same fireproofing support work, then the subcontractor , not Tutor Perini, would be the entity responsible for deciding the jurisdictional dispute through the agreements' grievance processes. See, e.g. , Dkt. 21 Ex. 4, Art. 5 § F (the Laborers CBA requiring subcontractors to "accept[ ] and agree[ ] to be bound by the procedures for settling jurisdictional disputes as set forth in" the agreement); id. Ex. G, § 506 (the Carpenters CBA requiring the same).
B. The Pechanga Hotel Expansion Project Dispute
As general contractor for the Project, Tutor Perini received competing bids for the subcontractor for the fireproofing work. The first bidder, Standard Drywall, Inc. ("SDI"), was a signatory to the Carpenters CBA but was not a signatory to the Laborers CBA. See Dkt. 21 Ex. 9, at 1. The second bidder, KHS & S Contractors ("KHS & S"), was a signatory to both the Laborers CBA and the Carpenters CBA. See Dkt. 21 Ex. 10, at 1. Because KHS & S was a signatory to both unions, Tutor Perini *1317 could have satisfied its subcontracting obligations under each respective collecting bargaining agreement by hiring KHS & S.
Nevertheless, SDI's bid for the fireproofing work was lower than the bid placed by KHS & S, and Tutor Perini selected SDI as the fireproofing subcontractor for the Project. See Dkt. 21 Exs. 9, 10. Tutor Perini and SDI then entered into a subcontract agreement which was dated June 28, 2016 and fully executed on November 17, 2016. Id. Ex. 11. The subcontract agreement covered "Spray Fireproofing" throughout the Project and "Drywall, Insulation & Firestopping" at the podium, spa, and pool buildings at the Project. Id. at 1. The subcontracting agreement also made SDI "responsible for jurisdiction disputes and claims by crafts over work included in this subcontract." Id. at 2.
By hiring SDI, Tutor Perini satisfied its obligations under the Carpenters CBA to select a fireproofing subcontractor signatory to the Carpenters CBA. SDI, in turn, hired its employees represented by Carpenters to perform fireproofing and "all other necessary or related work in connection therewith." Dkt. 21 Ex. G, § 105.1.1. Accordingly, because SDI was not a signatory to the Laborers CBA, Laborers employees were not assigned the fireproofing support work at the Project, work which they purportedly would have received had a fireproofing subcontractor signatory to the Laborers CBA been hired by Tutor Perini. See Dkt. 21 Ex. 4, Art. I §§ F.1, I.
After Tutor Perini hired SDI, on January 18, 2017, Laborers sent a letter to Tutor Perini notifying Tutor Perini that it was lodging a grievance related to Tutor Perini's hiring of SDI, a non-member of Laborers. Id. Ex. 1. Laborers requested that Tutor Perini remove SDI as the fireproofing subcontractor and instead hire a subcontractor that was a signatory to an agreement with Laborers, along with a payment of wages and fringe benefits for all work performed by SDI on the Project that would have been covered by the Laborers CBA. Id. at 1. If Tutor Perini failed to replace SDI, Laborers stated its intent to seek damages for all work performed by SDI on the Project covered by the Laborers CBA. Id. Tutor Perini responded to the letter on January 26, 2017 and requested that Laborers withdraw its grievance, stating that Laborers' grievance is really a competing claim to the same fireproofing support work between Laborers and Carpenters. Id. Ex. 2. In its letter, Tutor Perini claimed that its decision to hire SDI "was consistent with precedence set for this work in recent history within this project's jurisdictional boundaries." Id.
Consistent with the provisions of the Laborers CBA, the parties agreed to submit to arbitration, selected an arbitrator, and participated in an arbitration hearing on July 26, 2017. Id. Ex. 12. On February 6, 2018, the arbitrator issued an award in favor of Laborers (the "Award"), finding that Tutor Perini violated the Laborers CBA by failing to award the subcontract to a member of Laborers and enjoining Tutor Perini from continuing or future violations. See Dkt. 1-1 at 13-14. The arbitrator also awarded damages in the amount of $ 199,214 to Laborers and $ 118,420 to Laborers' trust fund. Id. at 14.
Tutor Perini initiated the instant action and filed a motion to vacate the Award pursuant to 9 U.S.C. § 10. Dkt. 20. Laborers filed a motion to confirm the Award pursuant to 9 U.S.C. § 9. Dkt. 17.
II. Standard of Review
A. Judicial Review of Labor Arbitration
This Court has jurisdiction over the parties' labor dispute pursuant to Section *1318 301(a) of the Labor Management Relations Act (the "LMRA"), which provides district courts with original jurisdiction-without regard to the amount in controversy or the citizenship of the parties-over any lawsuits "for violation of contracts between an employer and a labor organization representing employees ... or between any such labor organizations." 29 U.S.C. § 185(a). The Supreme Court has read § 301(a) to confer district courts with jurisdiction to enforce agreements to arbitrate disputes in a collective bargaining agreement, see Textile Workers Union of Am. v. Lincoln Mills of Ala. , 353 U.S. 448, 451, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), and the jurisdiction to enforce or vacate a final and binding arbitration award pursuant to a collective bargaining agreement, see Gen. Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co. , 372 U.S. 517, 519, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963).
The Supreme Court's Steelworks Trilogy recognized a federal policy favoring arbitration of labor disputes, describing the vital role of arbitration in the labor context as a substantive vehicle to provide meaning and content to the parties' collective bargaining agreement. See United Steelworkers of Am. v. Am. Mfg. Co. , 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960) ; United Steelworkers of Am. v. Warrior & Gulf Nav. Co. , 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) ; United Steelworkers of Am. v. Enter. Wheel & Car Corp. , 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Adhering to the Supreme Court's established policy favoring arbitration, the Ninth Circuit has consistently held that the "centrality of the arbitration process to stable collective bargaining relationships" requires courts reviewing labor arbitration awards to grant "a 'nearly unparalleled degree of deference' to the arbitrator's decision." Sw. Reg'l Council of Carpenters v. Drywall Dynamics, Inc. , 823 F.3d 524, 530 (9th Cir. 2016) (quoting Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173, Int'l Ass'n of Machinists & Aerospace Workers , 886 F.2d 1200, 1204-05 (9th Cir. 1989) (en banc) ), cert. denied , --- U.S. ---, 137 S.Ct. 829, 197 L.Ed.2d 68 (2017). The arbitrator's award is entitled to deference " 'even if the basis for the arbitrator's decision is ambiguous and notwithstanding the erroneousness of any factual findings or legal conclusions.' " Federated Dep't Stores v. United Foods & Commercial Workers Union, Local 1442 , 901 F.2d 1494, 1496 (9th Cir. 1990) (quoting Stead Motors , 886 F.2d at 1209 ). Accordingly, "[j]udicial scrutiny of an arbitrator's decision is extremely limited." Matthews v. Nat'l Football League Mgmt. Council , 688 F.3d 1107, 1111 (9th Cir. 2012) (emphasis in original) (quotation marks and citation omitted).
In one of the Steelworks Trilogy decisions, the Supreme Court explicitly stated that courts reviewing an arbitration award pursuant to a collective bargaining agreement should refuse to reach the merits of the arbitrator's decision. See Enter. Wheel & Car Corp. , 363 U.S. at 596, 80 S.Ct. 1358. The Supreme Court later clarified that "a court should not reject an award on the ground that the arbitrator misread the contract." United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc. , 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) ; see also Stead Motors , 886 F.2d at 1205 ("Since the labor arbitrator is designed to function in essence as the parties' surrogate, he cannot 'misinterpret' a collective bargaining agreement."). A court must uphold an arbitration award "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." Misco , 484 U.S. at 38, 108 S.Ct. 364 ; see also *1319 Virginia Mason Hosp. v. Wash. State Nurses Ass'n , 511 F.3d 908, 913-14 (9th Cir. 2007) (following Misco by noting that, "even if we were convinced that the arbitrator misread the contract or erred in interpreting it, such a conviction would not be a permissible ground for vacating the award").
Based on the above principles, the Ninth Circuit has elucidated four categories where a court is authorized under § 301 to vacate an arbitration award pursuant to a collective bargaining agreement:
(1) when the award does not draw its essence from the collective bargaining agreement and the arbitrator is dispensing his own brand of industrial justice; (2) where the arbitrator exceeds the boundaries of the issues submitted to him; (3) when the award is contrary to public policy; or (4) when the award is procured by fraud.
Drywall Dynamics , 823 F.3d at 530 (quoting S. Cal. Gas Co. v. Util. Workers Union of Am., Local 132, AFL-CIO , 265 F.3d 787, 792-93 (9th Cir. 2001) ).
B. Judicial Review under the Federal Arbitration Act
In filing their respective motions in this case, the parties cited the Federal Arbitration Act (the "FAA") as the means by which the Court may confirm or vacate the Award. See Dkt. 19 at 1; Dkt. 20-1 at 1. In the Complaint in this action, Tutor Perini also cited the FAA as granting the Court with jurisdiction over Tutor Perini's action to vacate the Award. See Dkt. 1 ¶ 3. The Ninth Circuit has not explicitly addressed whether the FAA applies to arbitration of collective bargaining agreements in the labor context, but courts are nevertheless authorized to "look to the FAA for guidance." Int'l All. of Theatrical Stage Emp. & Moving Picture Technicians, Artists, & Allied Crafts of the U.S., Its Trusted Local 720 Las Vegas, Nev. v. InSync Show Prods., Inc. , 801 F.3d 1033, 1039 (9th Cir. 2015) (citing Misco , 484 U.S. at 41 n. 9, 108 S.Ct. 364 ); see also Matthews , 688 F.3d at 1115 n. 7 (assuming arguendo that the FAA standards of review would apply to a review of a labor arbitration award).
Similar to the labor context, a court's review of an arbitration award under the FAA is "both limited and highly deferential." Coutee v. Barington Capital Grp., L.P. , 336 F.3d 1128, 1132 (9th Cir. 2003) (citations and internal quotation marks omitted). Under the FAA, a district court must grant a timely motion to confirm an arbitration award (1) if the parties have agreed that a court shall enter a judgment on the award and (2) if the arbitration award is not vacated, modified, or corrected. 9 U.S.C. § 9. The FAA limits a district court's power to vacate an arbitration award to the following circumstances:
(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
Id. § 10(a). The Supreme Court has explicitly held that Section 10 provides the exclusive means to overturn an arbitrator's award under the FAA. See *1320 Hall Street Associates, L.L.C. v. Mattel, Inc. , 552 U.S. 576, 584, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008).
In light of the limited judicial review of arbitration decisions under the FAA, "[c]ourts have interpreted [ Section 10(a) ] narrowly." See Todd Shipyards Corp. v. Cunard Line, Ltd. , 943 F.2d 1056, 1060 (9th Cir. 1991). "Indeed, § 10 of the FAA provides no authorization for a merits review." Biller v. Toyota Motor Corp. , 668 F.3d 655, 664 (9th Cir. 2012). Accordingly, arbitrators "exceed[ ] their powers" under Section 10(a)(4)"not when they merely interpret or apply the governing law incorrectly, but when the award is 'completely irrational' ... or exhibits a 'manifest disregard of law.' " Kyocera Corp. v. Prudential-Bache Trade Servs., Inc. , 341 F.3d 987, 1003 (9th Cir. 2003) (en banc) (quoting French v. Merrill Lynch, Pierce, Fenner & Smith, Inc. , 784 F.2d 902, 906 (9th Cir. 1986), and Todd Shipyards , 943 F.2d at 1060, respectively); see also Comedy Club, Inc. v. Improv West Assocs. , 553 F.3d 1277, 1290 (9th Cir. 2009) (noting that the "manifest disregard of law" standard articulated in Kyocera "is shorthand for a statutory ground under the FAA, specifically 9 U.S.C. § 10(a)(4)").
The Ninth Circuit has interpreted a manifest disregard of law as "something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." Lagstein v. Certain Underwriters at Lloyd's, London , 607 F.3d 634, 641 (9th Cir. 2010) (internal quotations and citation omitted). "[T]o demonstrate manifest disregard, the moving party must show that the arbitrator 'underst[oo]d and correctly state[d] the law, but proceed[ed] to disregard the same.' " Collins v. D.R. Horton, Inc. , 505 F.3d 874, 879 (9th Cir. 2007) (quoting San Martine Compania De Navegacion, S.A. v. Saguenay Terminals Ltd. , 293 F.2d 796, 801 (9th Cir. 1961) ); see also Comedy Club, Inc. , 553 F.3d at 1290 ("To establish manifest disregard of the law in the Ninth Circuit, '[i]t must be clear from the record that the arbitrator ... recognized the applicable law and then ignored it.' ") (citation omitted). Moreover, the governing law which the arbitrator allegedly disregarded "must be well defined, explicit, and clearly applicable." Collins , 505 F.3d at 879-80.
On similar reasoning, an arbitration award is completely irrational "only where the arbitration decision fails to draw its essence from the agreement." Lagstein , 607 F.3d at 642 (quotation marks and citation omitted). An award draws essence from the parties' agreement if the award "is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions." Bosack v. Soward , 586 F.3d 1096, 1106 (9th Cir. 2009).
In summary, based on the above standards, confirmation of an arbitration award under the FAA is required even when the award is attributable to erroneous findings of fact or misinterpretations of law. Lagstein , 607 F.3d at 640 ; Bosack , 586 F.3d at 1102. This is because "[t]he risk that arbitrators may construe the governing law imperfectly in the course of delivering a decision that attempts in good faith to interpret the relevant law ... is a risk that every party to arbitration assumes." Kyocera Corp. , 341 F.3d at 1003.
III. Analysis
Tutor Perini appears to raise three independent grounds for vacatur of the Award. First, Tutor Perini characterizes the competing unions' claims to subcontracting under each union's respective collective bargaining agreement with Tutor Perini as a "jurisdictional dispute" which can only be heard by the Board pursuant to a proceeding under Section 10(k) of the National *1321 Labor Relations Act (the "NLRA"), 29 U.S.C. § 160(k). Tutor Perini argues that both Laborers and Carpenters claim a right to the fireproofing support work to be performed by the subcontractor's employees, which makes their dispute one for the Board, and accordingly the arbitrator had no authority to make such a determination. Second, Tutor Perini argues that the Award conflicts with a prior § 10(k) determination by the Board, which awarded plastering work to employees of SDI represented by Carpenters. Tutor Perini argues that, under the Ninth Circuit's "supremacy doctrine," the Award directly conflicts with the Board's prior ruling, thus rendering the Award void. Lastly, under the same reasoning as the second argument, Tutor Perini seems to argue that the Award violates public policy because it directly conflicts with a prior Board determination.
A. Arbitrability of the Dispute
Tutor Perini argues that it was caught in a "quintessential jurisdictional dispute" regarding fireproofing support work between the Laborers CBA and the Carpenters CBA, a dispute which requires a § 10(k) determination by the Board. Dkt. 23 at 1. Tutor Perini asserts that, if Tutor Perini hired a subcontractor other than SDI that was a signatory to the Laborers CBA, Tutor Perini's failure to subcontract to a signatory of an agreement with Carpenters would amount to a violation of the Carpenters CBA. See Dkt. 21 Ex. G, § 503. Tutor Perini thus claims that "no matter to which union's employees [Tutor Perini] chose to subcontract[ ] the work, the other union would have sought relief under its collective bargaining agreement for [Tutor Perini]'s failure to direct that work to its union's employees." Dkt. 23 at 1. Tutor Perini raised this argument during the arbitration, asserting that the arbitrator lacked jurisdiction to decide a dispute that was actually jurisdictional in nature and amounted to an unfair labor practice under § 8(b)(4)(D), requiring a § 10(k) determination from the Board. In making this argument, Tutor Perini did not object to the arbitrator's authority to decide this threshold dispute regarding the arbitrator's jurisdiction, and Tutor Perini did not argue the substantive question of whether Tutor Perini breached the Laborers CBA by failing to hire a fireproofing subcontractor signatory to the Laborers CBA.
The scope of arbitration is a matter of contract, and accordingly "parties may agree to submit even the question of arbitrability to the arbitrator for decision." George Day Const. Co., Inc. v. United Bhd. of Carpenters & Joiners of Am., Local 354 , 722 F.2d 1471, 1474-75 (9th Cir. 1984) (citing Warrior & Gulf Co. , 363 U.S. at 583 n. 7, 80 S.Ct. 1347 ). The arbitrator may even be given implied authority to decide questions of arbitrability through "the conduct of the parties in the arbitration setting," which includes "submission of the merits of the dispute to arbitration without reserving the question of arbitrability." Id. at 1475 (citing Int'l Bhd. of Teamsters, Local 117 v. Wash. Emp'rs, Inc. , 557 F.2d 1345, 1350 (9th Cir. 1977) ).
After the arbitration hearing, counsel for Laborers and Tutor Perini both explicitly consented to the arbitrator deciding the question of his own jurisdiction. See Dkt. 21 Ex. 12, at 70:20-25 (the arbitrator asking the parties if they "agree that I can decide that issue" of arbitrability, and each party's counsel answering in the affirmative). The conduct of Tutor Perini and Laborers evince a clear intent to have the arbitrator determine whether he had jurisdiction to decide the subcontracting dispute. See George Day , 722 F.2d at 1475 (finding conduct evincing an intent *1322 for the arbitrator to decide his own jurisdiction because "[t]he merits of the dispute along with the question of jurisdiction were fully addressed by the parties during the arbitration proceeding and, at its conclusion, the entire controversy was submitted to the arbitrator for decision"). Because the parties consented to have the arbitrator hear that question, the arbitrator did not exceed the bounds of the issues submitted to him by deciding the arbitrability of the subcontracting grievance.
In the Award, the arbitrator expressly rejected Tutor Perini's argument that the arbitrator lacked jurisdiction to resolve the subcontracting dispute. Dkt. 1-1 at 7. Recognizing conflicting authority on the interplay between arbitration awards and Board hearings, the arbitrator noted that "[t]here are many situations in which there is dual jurisdiction between arbitration and NLRB action" and that Tutor Perini did not explain "why the arbitrator should be the one to determine a jurisdictional dispute between arbitration and Board hearings." Id. at 7-8. The arbitrator concluded that "there is nothing to indicate that arbitrators should make a substantive arbitrability decision not to hear a case simply because the matter may also be covered by a 10(k) or 8(b)(4)(D) proceeding." Id. at 8-9.
Based on the arbitrator's analysis, the arbitrator fully considered the issue of his own jurisdiction and concluded that he had jurisdiction over the subcontracting grievance. The Court must defer to the merits of the Award in that regard. See Drywall Dynamics , 823 F.3d at 530 ; George Day , 722 F.2d at 1476 ("[W]here the question of arbitrability is decided by the arbitrator, we are not at liberty to substitute our own view in place of the arbitrator's regardless what our view might be of the correctness of the arbitral decision."). Even if Tutor Perini were correct that the subcontracting dispute was jurisdictional and ripe for a § 10(k) determination by the Board, the Laborers CBA requires arbitration of all grievances or disputes between Tutor Perini and Laborers, which expressly includes jurisdictional disputes. Dkt. 21 Ex. 3, Art. III § A. Thus, no matter how the grievance is characterized, the Award draws its essence from the Laborers CBA, the scope of the Award was within the arbitrator's authority, and the Award constitutes a fair construction and application of the parties' intent under the Laborers CBA. See Misco , 484 U.S. at 38, 108 S.Ct. 364.
Neither was the arbitrator's decision regarding arbitrability a "manifest disregard of law," Kyocera Corp. , 341 F.3d at 1003, as Tutor Perini has not pointed the Court to any authority disregarded by the arbitrator that requires the arbitrator to abstain from ruling on a jurisdictional dispute under § 8(b)(4)(D).[3] On the contrary, the Supreme Court has held that "the possibility of conflict [within the Board's jurisdiction] is no barrier to resort to a tribunal other than the Board." Carey v. Westinghouse Electric Corp. , 375 U.S. 261, 272, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964). Accordingly, the Court must give due deference to the arbitrator's determinations on the merits in the Award and reject Tutor Perini's argument that the arbitrator lacked jurisdiction to decide the arbitrability of the subcontracting dispute, even if the subcontracting grievance could have been brought before the Board under *1323 § 10(k) as a jurisdictional dispute.[4]
Laborers correctly points out that Tutor Perini could have taken one of several steps to preserve independent judicial scrutiny of the arbitrator's jurisdiction to decide the subcontracting dispute. First, Tutor Perini could have refused to arbitrate the matter entirely, which would have required Laborers to compel arbitration under § 301. See George Day , 722 F.2d at 1476. Second, after consenting to arbitration, Tutor Perini could have expressly objected on the record to the arbitrator's jurisdiction to decide the merits of the dispute and refused to argue that question before the arbitrator, instead proceeding only to the merits of the subcontracting grievance. See id. at 1475-76 ("Had the employer objected to the arbitrator's authority, refused to argue the arbitrability issue before him, and proceeded to the merits of the grievance, then, clearly the arbitrability question would have been preserved for independent judicial scrutiny."). Third, Tutor Perini could have proactively filed a lawsuit seeking declaratory and injunctive relief prior to consenting to arbitration, allowing a district court to make an independent determination of the arbitrability of the dispute. See id. at 1476.
Once Laborers refused to resolve the subcontracting grievance as a jurisdictional dispute, Tutor Perini could have taken any one of the options described above to circumvent a binding arbitration decision regarding the arbitrator's jurisdiction over the subcontracting grievance. Instead of taking any such action, Tutor Perini wholly consented to arbitration and authorized the arbitrator to decide his own jurisdiction. After an unfavorable ruling by the arbitrator, Tutor Perini cannot now seek the Court to review independently the arbitrator's determinations on the merits of the parties' dispute, which-as submitted to the arbitrator-included the question of the arbitrator's jurisdiction. See George Day , 722 F.2d at 1476-77 (deferring to an arbitrator's jurisdictional ruling because "[t]he parties have delegated that decision to the arbitrator and we may not 'second-guess' him") (quoting W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am. , 461 U.S. 757, 765, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983) ).
In conclusion, Tutor Perini's argument that the arbitrator lacked authority to decide what may have been a jurisdictional dispute before the Board is incorrect. Tutor Perini consented to the arbitrator's authority to decide whether the arbitrator had jurisdiction over the subcontracting dispute, and the arbitrator concluded that he did have such jurisdiction. The Court must uphold the arbitrator's findings on this issue in the Award under the deferential standards set forth above.
B. Supremacy Doctrine
Tutor Perini next makes a substantive argument for invalidating the Award, arguing that the Award contradicts a prior § 10(k) determination by the Board that awarded disputed plastering work to employees of SDI that were represented by Carpenters.
The NLRA grants the Board the authority to adjudicate certain disputes among employers and labor organizations in order to "prevent any person from engaging in any unfair labor practice." 29 U.S.C. § 160(a). Section 10(k) provides the Board with the authority to hear and make *1324 determinations regarding a charge that a person has engaged in an unfair labor practice under Section 8(b)(4)(D). Id. § 160(k). Section 8(b)(4)(D), in turn, makes it an unfair labor practice for a labor organization to engage in, or threaten to engage in, certain striking activity or work stoppages with the purpose of
forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work ....
Id. § 158(b)(4)(D). Thus, the Board has jurisdiction to resolve disputes between two or more unions competing for the same work assignment.
Under established Ninth Circuit precedent, the supremacy doctrine "bars an arbitrator from making an award inconsistent with a NLRB determination." Int'l Longshoremen's & Warehousemen's Union, Local 32 v. Pac. Mar. Ass'n , 773 F.2d 1012, 1016 (9th Cir. 1985) (" Local 32 "). Specifically, "the Board's section 10(k) determination must take precedence over a section 301 suit seeking to enforce an arbitrator's contrary award." Id. (citations omitted); see also A. Dariano & Sons, Inc. v. Dist. Council of Painters No. 33 , 869 F.2d 514, 517 (9th Cir. 1989) (the supremacy doctrine "establishes that an NLRB decision on a representational issue overrides an arbitrator's decision on the same issue"); Sea-Land Serv., Inc. (Pac. Div.) v. Int'l Longshoremen's & Warehousemen's Union, Locals 13, 63, & 94 , 939 F.2d 866, 872-73 (9th Cir. 1991) (recognizing Local 32 as holding that "when an arbitrator awards work to one union, but the NLRB gives the work to another union, the NLRB's determination supersedes the arbitration award"); Int'l Longshore & Warehouse Union v. ICTSI Or., Inc. , 863 F.3d 1178, 1188 (9th Cir. 2017) ("Once a § 10(k) order becomes final, it takes precedence over any inconsistent arbitration award.").
The Ninth Circuit in Local 32 also held that "the failure to move to vacate an arbitration award within the applicable limitations period does not preclude a prior or subsequent section 10(k) decision from invalidating a contrary arbitration award." Local 32 , 773 F.2d at 1020. Referencing the Supreme Court's statement that "the NLRB's superior section 10(k) authority could be invoked 'at any time,' " id. (quoting Carey v. Westinghouse Electric Corp. , 375 U.S. 261, 272, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964) ), the Ninth Circuit concluded, in conformity with other circuits, that "a section 10(k) determination made subsequent to an arbitration award will effectively void the preceding award," id. (citations omitted). The Ninth Circuit thus interpreted the supremacy doctrine as vacating conflicting arbitration awards issued either before or after a Board's Section 10(k) decision, "without any action by the loser of the arbitration." Id.
The supremacy doctrine does not void a contrary arbitration award in its entirety; the precedence of the Board's § 10(k) determination is limited only "to the extent necessary to effectuate the 10(k) determination." Sea-Land , 939 F.2d at 873 ("To allow the NLRB to supersede arbitration awards beyond what is needed to resolve the specific jurisdictional dispute at issue would undermine Congress's intent regarding the role of arbitration."); see also Carpenters' Local Union No. 1478 v. Stevens , 743 F.2d 1271, 1279 (9th Cir. 1984) ("[W]here the findings of the Board and an arbitrator conflict on a particular *1325 issue , the Board's decision must take precedence.") (emphasis added) (citing Cannery Warehousemen, Food Processors, Drivers & Helpers v. Haig Berberian, Inc. , 623 F.2d 77 (9th Cir. 1980) ).
1. Prior Board Ruling Requiring SDI to Hire Carpenters
The prior Board decision which Tutor Perini claims is in conflict with the Award is Southwest Regional Council of Carpenters (Standard Drywall, Inc.) , 348 N.L.R.B. 1250 (2006) (" SDI II "). There, SDI filed a charge with the Board to settle a jurisdictional dispute between Carpenters and the Operative Plasterers' and Cement Masons' International Association, Local No. 200, AFL-CIO ("Local 200"). Id. at 1250. SDI was subject to a written agreement with Carpenters requiring SDI to assign plastering work to employees represented by Carpenters and had no written agreement with Local 200. Id. The Board defined "plastering work" to include, among other actions, "[t]he application of materials used for contract fireproofing, fireproofing, acoustical finish, or decorative finish." Id. at 1251. In accordance with the SDI assigned plastering work to Carpenters employees for a variety of public works project in 12 California counties.
Dissatisfied with SDI's decision to assign work to employees of Carpenters, Local 200 sued SDI in state court, alleging violations of the California prevailing wage law[5] and seeking an injunction requiring SDI to assign the plastering work to employees represented by Local 200. Id. Following an earlier Board proceeding regarding one public works project in particular, where the Board awarded the plastering work to SDI employees represented by Carpenters, Local 200 refused to withdraw its lawsuit against SDI and continued to seek a legal determination that employees represented by Local 200 were entitled to perform the plastering work on the remaining public works projects for which SDI was hired in Southern California. SDI II , 348 N.L.R.B. at 1250; see also Sw. Reg'l Council of Carpenters (Standard Drywall, Inc.) , 346 N.L.R.B. 478, 483 (2006) (" SDI I "). Accordingly, SDI initiated a second Board proceeding to determine jurisdiction over "[p]lastering work at the public works projects in the 12 Southern California counties." 348 N.L.R.B. at 1251.
Addressing the merits of the dispute, the Board in SDI II assigned the plastering work to employees represented by Carpenters. Id. at 1255. The Board considered various factors and found that the collective bargaining agreement between SDI and Carpenters, SDI's preference and past practice, and the economy and efficiency of operations were factors that weighed in favor of Carpenters. Id. at 1254-55. Unlike in SDI I , however, where the Board limited its decision to the single public works project at issue, see 346 N.L.R.B. at 483, the Board in SDI II issued a broad award covering all future public works projects. 348 N.L.R.B. at 1256. The Board determined that there was sufficient evidence that future disputes would occur based on the threats to strike from Carpenters and based on the likelihood that Local 200 would continue to pursue its lawsuit against SDI. SDI II , 348 N.L.R.B. at 1256. Thus, the Board held that "the determination of this dispute applies not only to the jobs in which the dispute arose but to all similar work done or to be done by [SDI] on any other public works projects in the 12 Southern California counties." Id. The Board summarized its decision as holding that "[e]mployees of *1326 Standard Drywall, Inc. represented by Southwest Regional Counsel of Carpenters are entitled to perform the work in dispute: Plastering work at the public works projects in the 12 Southern California counties." Id.[6]
2. Whether the Subcontracting Grievance Is a Jurisdictional Dispute
Tutor Perini characterizes Laborers' subcontracting grievance as a jurisdictional dispute because the subcontracting grievance involves "competing unions' claim to the same work," i.e. , the fireproofing support work to be performed by the subcontractor's employees. Dkt. 23 at 2. Because the subcontracting grievance is actually a jurisdictional dispute to the work of SDI's employees, Tutor Perini argues, the Award determining that Tutor Perini violated the subcontracting obligations under the Laborers CBA was contrary to the Board's § 10(k) determination in SDI II requiring that Tutor Perini subcontract fireproofing work to SDI.
Tutor Perini's legal characterization of the subcontracting dispute has been rejected by the Board in prior § 10(k) determinations. Indeed, the Board has consistently distinguished between claims to disputed work between competing labor unions and claims of breach of a subcontracting agreement under a collective bargaining agreement, finding that the latter is not a violation of § 8(b)(4)(D). See, e.g., Laborers Int'l Union of N. Am. (Capitol Drilling Supplies, Inc.) , 318 N.L.R.B. 809, 810-11 (1995) (finding no reasonable basis to believe that § 8(b)(4)(D) has been violated where a union seeks to enforce a clause in a collective bargaining agreement with a general contractor requiring subcontracts only to union members); Carpenters Local 33 (AGC of Mass.) , 289 N.L.R.B. 1482, 1484 (1988) ("[W]e find that the Board's 10(k) decision precludes Local 33 from forcing the use of employees it represents on the disputed [subcontracted] scaffolding work, but does not preclude Local 33 from asserting its contract rights against [the general contractor], including possible money damages for breach of contract."); cf. Int'l Bhd. of Elec. Workers, Local Union No. 363, AFL-CIO (U.S. Info. Sys.) , 326 N.L.R.B. 1382, 1383 (1998) (finding a "true jurisdictional dispute" where a labor union not only sought contractual remedies against the employer but also approached the subcontractor and "made a clear and direct claim to the subcontractor for the disputed work"). Only if a union threatens a general contractor or subcontractor with economic action over the general contractor's subcontracting decision can the general contractor itself file an unfair labor charge to initiate § 10(k) proceedings before the Board. See Capitol Drilling Supplies , 318 N.L.R.B. at 812 ("If the union that has been pursuing its contract breach claim against the general contractor fails to confine itself to purely peaceful means, but also communicates an intent to disrupt the assignment of work by coercive means, we will deem this to be a competing claim for the work even if the coercive message was communicated only indirectly to the subcontractor that assigned the work.");
*1327 Operating Eng'rs Local 150 (Austin Co.) , 296 N.L.R.B. 938, 941 n. 15 (1989) (accepting jurisdiction over a charge filed by a general contractor because the union "has directed its coercion against [the subcontractor] to influence [the subcontractor's] assignment of the work").
In fact, when presented with near identical facts as the instant case, the Board rejected jurisdiction over a general contractor's unfair labor practice charge against a union's pursuit of a subcontracting grievance. In Miron Construction , the general contractor filing the unfair labor charge with the Board was signatory to two competing collective bargaining agreements which each purportedly covered the same disputed work. Laborers Int'l Union of N. Am. Local 1086 (Miron Const.) , 320 N.L.R.B. 99, 99 (1995). Nevertheless, the Board still concluded that, based on its previous decision in Capitol Drilling Supplies , "there are no competing claims to the disputed work between rival groups of employees" when a union files a subcontracting grievance against a general contractor without taking economic action. Id. at 100. Accordingly, because the union "never engaged in any dispute with ... the subcontractor" and "did not seek to enforce its position by either threatening to, or actually, picketing, striking, or boycotting," the Board found no jurisdictional dispute for it to review. Id.
Case law also confirms that a contractual grievance regarding a breach of a subcontracting agreement is not a jurisdictional dispute in the absence of an actual claim by the union filing the subcontracting grievance to the assigned work. Laborers correctly points out that Associated General Contractors of America, Inc., Oregon-Columbia Chapter v. International Union of Operating Eng'rs, Local 701 , 529 F.2d 1395 (9th Cir. 1976) (" Local 701 "), cert. denied , 429 U.S. 822, 97 S.Ct. 72, 50 L.Ed.2d 84 (1976), is directly applicable to the instant case.
In Local 701 , the Board resolved a jurisdictional dispute between labor unions as to concrete pump workers at a nuclear power plant. Id. at 1396. Associated General Contractors ("AGC") was a signatory to a collective bargaining agreement with International Union of Operating Engineers, Local 701 ("Local 701"), requiring all members of AGC to subcontract concrete pumping work only to subcontractors signatory to the Local 701 agreement. Id. Western-Pacific Piledriving Corp. ("Western-Pacific"), a contractor and member of AGC, subcontracted concrete pumping work at the nuclear power plant to Pump-Con, Inc., a subcontractor that was a member of the Northwest Concrete Pumping Association ("Northwest"). Id. Northwest was a signatory to a collective bargaining agreement with Teamsters No. 37 ("Teamsters"), which required Northwest members to employ only Teamsters members to operate concrete pumps. Id. Accordingly, adhering to the Teamsters agreement, Pump-Con hired a member of Teamsters to operate the concrete pump. Id.
Local 701 filed a grievance against Western-Pacific, and a board of adjustment ruled that Local 701 was entitled to the disputed work. Id. After Teamsters threatened to strike, Western-Pacific filed an unfair labor charge under § 8(b)(4)(D) with the Board, which determined that Teamsters was entitled to the concrete pumping work at the power plant site. Id. The Board expanded the scope of its ruling "to cover all situations in which members of the Northwest performed concrete pumping work for AGC contractors." Id. Despite losing before the Board, Local 701 continued to file grievances against AGC members that subcontracted the disputed work to members of Northwest, in violation of the collective bargaining agreement *1328 between Local 701 and AGC. Id. In an action for declaratory and injunctive relief filed by AGC, the district court held that the Board's order required reformation of the contract between Local 701 and AGC to eliminate the provision that required AGC to subcontract exclusively to signatories of the Local 701 agreement. Id. at 1397.
On appeal, the Ninth Circuit reversed the district court. Id. at 1398. The court acknowledged the preemptive effect of a Board's § 10(k) determination on conflicting contract provisions, but the court held that the preemption doctrine does not "render the contract provision invalid for all purposes." Id. at 1397. The court distinguished precedent cases involving "a single employer caught between the conflicting demands of two or more unions," because a dispute regarding subcontracting obligations "does not involve these intractable problems." Id. The court explained that AGC members could fulfill their contractual obligations to Local 701 by using only subcontractors that were signatory to the Local 701 agreement without violating the Board's § 10(k) order:
If an AGC member subcontracts the concrete pump work with a member of Northwest, the Teamsters will be entitled to man the pumps. But there is no legal obligation upon an AGC member to contract with a member of Northwest. By refraining from doing so, and contracting with a subcontractor who is a party to the AGC-Local 701 agreement, the AGC member avoids any breach of the contract with Local 701. Nothing in the NLRB decision purports to prevent AGC members from complying with the AGC-Local 701 agreement. All that the Board held is that if an AGC member does breach the AGC-Local 701 agreement by subcontracting with a member of Northwest, the Teamsters will get the work. It is the making of such a subcontract which breaches the AGC-Local 701 contract.
Id. at 1398 (emphasis added). Accordingly, the Ninth Circuit held that, while the Board's decision necessitates that Local 701 cannot use its collective bargaining agreement to require Northwest members to hire Local 701 employees, "this does not mean that Local 701 cannot get damages for the breach" of the collective bargaining agreement between Local 701 and AGC members. Id.
Other courts have followed Local 701 and held that a contractual grievance for a subcontracting violation is not a jurisdictional dispute that seeks to contradict a prior Board determination awarding the disputed work to union-represented employees of a subcontractor. See Hutter Const. Co. v. Int'l Union of Operating Eng'rs, Local 139, AFL-CIO , 862 F.2d 641 (7th Cir. 1988) (distinguishing a jurisdictional claim for disputed work from a legitimate contractual claim due to a subcontracting violation and holding that "the arbitrator and the NLRB rendered consistent awards in this case"); Miron Const. Co., Inc. v. Int'l Union of Operating Eng'rs, Local 139 , 44 F.3d 558, 566 (7th Cir. 1995) (following Hutter and holding that "[a]n arbitrator's award of backpay to one union in a subcontracting dispute is not inconsistent with the NLRB's prior award of the work to a different union in a § 10(k) proceeding"); S. Cal. Dist. Council of Laborers v. Berry Const. Inc. , No. CV 90-2393-RMT (KX), 1991 WL 487235, at *2 (C.D. Cal. June 20, 1991) (compelling arbitration of a subcontracting grievance because a Board's jurisdictional decision regarding a subcontractor's employees "does not preclude the Laborers Union from asserting its contractual remedies for breach of contract" against the contractor);
*1329 Associated Gen. Contractors of Mass., Inc. v. Boston Dist. Council of Carpenters , 599 F.Supp. 1560, 1562 (D. Mass. 1985) (denying tripartite arbitration on the ground that the union's subcontracting grievance "has no jurisdictional component" because the requested arbitration "is one dealing only with the contract right of the Carpenters to have scaffolding work done by employers who have agreements with the Carpenters and will not grant the Carpenters the right to perform work at [the disputed project site] or any other construction project").
Here, based on the applicable precedent cited above, it is clear that the subcontracting dispute before the arbitrator was not a jurisdictional claim to the same work between Laborers and Carpenters. Laborers did not claim entitlement to the fireproofing support work once SDI was chosen as the fireproofing subcontractor for the Project. Laborers did not, and does not, threaten to strike if Tutor Perini fails to subcontract any portion of the fireproofing work to Laborers-represented subcontractors. In fact, Laborers did not take any labor action in response to Tutor Perini selecting SDI over KHS & S for the Project. Nor could Laborers have taken any such action against Tutor Perini in response to the subcontracting violation, as the MLA provides that Laborers "shall not have the right to use strike or any other economic action to enforce any provisions of this Article on subcontracting." Dkt. 21 Ex. 4, Art. V § E. In the absence of any true claim by Laborers to the fireproofing support work for the Project, the subcontracting dispute was purely a financial one for contract damages, rooted only in the collective bargaining agreement duly executed by Tutor Perini and Laborers. And, as the precedent cited above shows, the Board has consistently taken the position that it has no authority to adjudicate a purely financial subcontracting dispute because the violation of a subcontracting provision in a contract, without adverse economic action by the aggrieved union, does not constitute an "unfair labor practice" under § 8(b)(4)(D). See Miron Const. , 320 N.L.R.B. at 99. Therefore, the subcontracting dispute was not within the Board's jurisdiction and does not conflict with SDI II on that basis.
The cases Tutor Perini cites in support of its position that the subcontracting dispute is jurisdictional in nature, and therefore conflicts with the Board's § 10(k) determination in SDI II , are all distinguishable from the instant dispute. In Local 32 , the Ninth Circuit held that the Board's decision awarding work of a subcontractor to one union directly conflicted with an arbitrator's decision awarding time-in-lieu payments against the same employer to the union that lost before the Board. See Local 32 , 773 F.2d at 1014, 1017. Here, the subcontracting grievance between Tutor Perini and Laborers only affected Tutor Perini as the general contractor and did not result in an award of damages against SDI, the subcontractor, for failing to hire Laborers employees to perform contracting work. In J.F. White , the First Circuit found a Board determination in conflict with an arbitration award that "specifically order[ed] [the employer] to take from Laborers the very work that the NLRB has said they should have." J.F. White Contracting Co. v. Local 103 Int'l Bhd. of Elec. Workers , 890 F.2d 528, 529 (1st Cir. 1989). Here, however, the Award did not purport to assign any portion of the disputed fireproofing work to Laborers and away from Carpenters. In J.S. Alberici , the Eighth Circuit declined to follow Hutter and reversed the district court's order compelling arbitration, instead finding that the "jurisdictional dispute and the breach of the subcontracting clause are so intertwined as to be one conflict."
*1330 Local 513, Int'l Union of Operating Eng'rs v. J.S. Alberici Const. Co. , 936 F.2d 390, 392 (8th Cir. 1991). However, the Eighth Circuit concluded that the dispute was jurisdictional-and therefore exempt from arbitration under the terms of the collective bargaining agreement-because the substantive disagreement between the parties "arose as a quarrel over who had the authority to run air compressors on the jobsite," only after the union discovered that the work was being performed by a competing union's employees. Id. By contrast, here neither Tutor Perini nor Laborers claim that Laborers is entitled to perform the actual fireproofing support work for the Project; the parties acknowledge that, once Tutor Perini hired SDI, SDI's employees represented by Carpenters were properly assigned all of the fireproofing work pursuant to the Board's § 10(k) determination in SDI II .[7]
Tutor Perini's argument that "no matter to which union's employees [Tutor Perini] chose to subcontract[ ] the work, the other union would have sought relief under its collective bargaining agreement for [Tutor Perini]'s failure to direct that work to its union's employees," Dkt. 23 at 1, is incorrect. It is true that, in the event that a Carpenters-backed subcontractor vies with a Laborers-backed subcontractor for the same fireproofing support work on a project, Tutor Perini may be "a single employer caught between the conflicting demands of two or more unions" if it cannot hire a subcontractor that is a signatory to both collective bargaining agreements. Local 701 , 529 F.2d at 1397. But that is plainly not the predicament Tutor Perini faces under the two collective bargaining agreements.
As explained above, both Laborers and Carpenters agree that the substantive fireproofing work is covered under the Carpenters CBA but not the Laborers CBA. This means that, per the terms of the Carpenters CBA, Tutor Perini is obligated to hire a fireproofing subcontractor that is a signatory with Carpenters to ensure that Carpenters-represented employees are assigned the substantive fireproofing work. Tutor Perini's hiring of a subcontractor that is not a signatory to an agreement with Carpenters would be a clear violation of the Carpenters CBA solely on the basis that Tutor Perini did not subcontract the substantive fireproofing work to a Carpenters signatory. Such a subcontracting violation *1331 would be wholly irrespective of any potential jurisdictional overlap between Carpenters and Laborers over the fireproofing support work. Thus, because Tutor Perini must always hire a Carpenters signatory as a subcontractor for substantive fireproofing work, Tutor Perini's subcontracting decision will necessarily be between a Carpenters-only subcontractor and a Carpenters-and-Laborers subcontractor. Since both bidders are signatories with Carpenters, Tutor Perini complies with the Carpenters CBA no matter who it hires as the subcontractor, and Carpenters would have no occasion to file a subcontracting grievance solely on the basis of jurisdictional overlap regarding the fireproofing support work. As a result, there is no true conflict between the Carpenters CBA and the Laborers CBA regarding Tutor Perini's subcontracting obligations.
The instant case is an example of how the above principles are applied to reveal that Tutor Perini was not between a rock and a hard place when receiving the fireproofing bids for the Project. KHS & S, the other subcontractor that bid on the fireproofing work at issue, indicated on its bid form that it was a signatory to an agreement both with Laborers and with Carpenters. See Dkt. 21 Ex. 10, at 1 (on KHS & S's bid form, under the Union Status header, checking "Yes" on the line for "Signatory" and writing "Local Carpenters, Tapers, Laborers" as the Local #). Even if there are questions regarding jurisdiction over fireproofing support work between the Carpenters CBA and the Laborers CBA, Tutor Perini could have satisfied its subcontracting obligations to both unions by hiring KHS & S, which represented that it was a signatory to both agreements. By hiring KHS & S, Tutor Perini would not have been exposed to a subcontracting grievance from Carpenters, because Tutor Perini would have subcontracted all work covered by the Carpenters CBA to a subcontractor signatory to an agreement with Carpenters.
Because the subcontractor is the entity that actually assigns the fireproofing support work, the subcontractor-and not Tutor Perini-is responsible for any disputes between unions over work assignments. The terms of the subcontracting agreement between Tutor Perini and SDI would have required KHS & S, as the subcontractor, to be responsible for any jurisdictional disputes by virtue of being a signatory to both the Laborers CBA and the Carpenters CBA. See Dkt. 21 Ex. 11, at 2 ("Subcontractor will be responsible for jurisdiction disputes and claims by crafts over work included in this subcontract and shall not employ labor or means in performance of any work that is the subject of this subcontract which may cause strikes, work stoppages or any disturbances by" the subcontractor's employees). By making the subcontractor responsible for a jurisdictional dispute over fireproofing support work, Tutor Perini would be insulated from involvement in any proceedings to resolve the dispute between the unions.
Thus, by hiring KHS & S, Tutor Perini not only would have satisfied its subcontracting obligations to both unions but also could have potentially triggered a true jurisdictional dispute regarding KHS & S's employees over the fireproofing support work, leading to a full resolution between Carpenters and Laborers via arbitration[8] *1332 or by the Board in a § 10(k) proceeding. As noted above, KHS & S as the subcontractor would have had the ability to file charges with the Board for unfair labor practices if any of KHS & S's own employees represented by either Carpenters or Laborers engaged in a strike or withheld work on the basis that those employees should have received the fireproofing support work pursuant to their respective union's collective bargaining agreement. Having hired SDI instead of KHS & S, Tutor Perini gave up that option.[9]
In summary, Tutor Perini's choice between fireproofing subcontractors did not implicate competing claims to the underlying fireproofing support work at the employee level, which is necessary to amount to an unfair labor practice that triggers the Board's jurisdiction. Instead, the decision Tutor Perini faced was simply who it should hire as a subcontractor for fireproofing work, and Tutor Perini's options were constrained by Tutor Perini's voluntary decision to enter into collective bargaining agreements with both Laborers and Carpenters. See Capitol Drilling Supplies , 318 N.L.R.B. at 811 (noting that a general contractor's inability to initiate a § 10(k) proceeding before the Board in regard to a subcontracting grievance "will encourage general contractors to abide by lawful signatory clauses in agreements into which they have voluntarily entered"). Laborers' subcontracting dispute merely seeks to hold Tutor Perini responsible for its decision to hire SDI based on Tutor Perini's contractual obligations under the Laborers CBA, without threatening to interrupt the actual fireproofing work to be performed at the project site. Therefore, the subcontracting dispute before the arbitrator was not a jurisdictional dispute that could be resolved by the Board.
3. Application of SDI II to the Award
Because the subcontracting dispute at issue in the arbitration was not a jurisdictional dispute for the Board to consider in a § 10(k) determination, it is clear to the Court that the supremacy doctrine does not apply to void the Award at issue in this case. In the Award, the arbitrator *1333 did not order any portion of the fireproofing work at the Project to be assigned to Laborers-represented employees of SDI. Instead, the arbitrator awarded damages to Laborers for Tutor Perini's violation of the subcontracting provisions in the Laborers CBA. The arbitrator did not determine-let alone address the issue in the Award at all-that Laborers had a superior claim to SDI's plastering work. The arbitrator only resolved a contractual dispute between Tutor Perini and Laborers regarding the subcontracting clause, a dispute which was wholly independent from which employees of SDI were entitled to perform the fireproofing work-or even which union was entitled to receive the subcontracting of fireproofing work over the other. Neither did the arbitrator award damages to Laborers on the basis that Laborers-represented employees were not hired by SDI to perform the fireproofing support work, which would have expressly contradicted the Board's decision in SDI II awarding plastering work to SDI's Carpenters-represented employees. Thus, because the Award did not make any assignments of fireproofing support work and did not award Laborers damages on the ground that its employees were not hired by SDI, the Award does not conflict with SDI II in any respect.
Nevertheless, even if the subcontracting dispute between Tutor Perini and Laborers was jurisdictional based on the apparent conflict between the claims to fireproofing support work in the Laborers CBA and the Carpenters CBA, such a jurisdictional conflict would not implicate the Board's prior determination in SDI II . The issues in SDI II pertained only to which labor organization's employees were entitled to perform plastering work for SDI in light of SDI's collective bargaining agreement with Carpenters. Tutor Perini's interpretation of SDI II as affirmatively requiring Tutor Perini to select SDI as the fireproofing subcontractor for the Project, at the exclusion of other subcontractors regardless of union affiliation, is incorrect.
Analogous to Local 701 , the Board's determination in SDI II only pertained to the dispute between labor organizations regarding the subcontractor's employees. The Board explicitly concluded that "[e]mployees of Standard Drywall, Inc. represented by Southwest Regional Counsel of Carpenters are entitled to perform the work in dispute." SDI II , 348 N.L.R.B. at 1256 (emphasis added). The Board defined the work in dispute as "[p]lastering work at the public works projects in the 12 Southern California counties." Id. at 1251. However, the Board's determination applied only to SDI's own employees. SDI was the party filing the charge of unfair labor practices under § 8(b)(4)(D) against Local 200, meaning that the Board's determination was limited to which of SDI's employees were required to be assigned plastering work for any work SDI performed on public works projects. As in Local 701 , nothing in SDI II imposed any affirmative obligation on the part of any general contractor, such as Tutor Perini, to hire SDI as a subcontractor for any project not yet assigned. See Local 701 , 529 F.2d at 1398 ("Nothing in the NLRB decision purports to prevent AGC members from complying with the AGC-Local 701 agreement."). The Board in SDI II merely resolved the jurisdictional dispute between Carpenters and Local 200 as to which of SDI's employees were entitled to perform plastering work for public works projects for which SDI was already hired.
Neither Tutor Perini nor Laborers was a party to SDI II or any other prior jurisdictional dispute before the Board involving SDI. The only parties that were bound by the Board's § 10(k) determinations were SDI, Carpenters, and Local 200, none of which is a party to the instant *1334 subcontracting dispute. The Board's § 10(k) determination in SDI II only applied to Tutor Perini's decision in the sense that SDI, hired as the fireproofing subcontractor for the Project, was required to assign all plastering work to SDI's employees represented by Carpenters. SDI II did not require Tutor Perini to select SDI as the fireproofing subcontractor over other subcontractors; had Tutor Perini chosen a different subcontractor for that work, the Board's determinations regarding SDI's employees would not be implicated at all. Thus, while SDI II protects SDI as the employer from challenges to the jurisdiction of SDI's Carpenters-represented employees over plastering work, SDI II does not speak to the obligations of general contractors such as Tutor Perini when selecting between SDI or other plastering subcontractors for any particular project.
Importantly, SDI II also did not purport to resolve the potential overlap between the Laborers CBA and the Carpenters CBA regarding fireproofing support work. SDI, the party filing the unfair labor practice charge, was only a signatory to an agreement with Carpenters and had no written agreement with Local 200. Local 200 argued before the Board that its represented employees of SDI should be entitled to the disputed plastering work "based on the factors of area and industry practice, and economy and efficiency of operations" and irrespective of SDI's existing written agreement with Carpenters. 348 N.L.R.B. at 1252. Thus, not only did the Board limit the scope of its ruling to SDI's employees, but it did not even reach the substantive question that Tutor Perini argues was conclusively decided in Carpenters' favor.
Finally, as Laborers points out in its opposition to Tutor Perini's motion to vacate the Award that the Project is not even subject to the broad order in SDI II . See Dkt. 22 at 13. The Board's determination in SDI II was limited in scope only to "[p]lastering work at the public works projects." 348 N.L.R.B. at 1251 (emphasis added). The Court is inclined to believe that, even if SDI II did mandate Tutor Perini to hire SDI specifically for public works projects generally, Tutor Perini would not have been obligated to do so for the Project, which is an expansion of a private hotel. The arbitrator did not address this question in the Award, suggesting that the parties did not raise it in the arbitration. Nevertheless, the Court views the scope of the broad order in SDI II as covering only public works projects to be another basis to find that the supremacy doctrine is inapplicable here.
In conclusion, Tutor Perini's argument that the Award conflicts with the Board's prior § 10(k) determination is without merit. The Award resolved a contractual dispute between Tutor Perini and Laborers, separate and apart from a jurisdictional dispute between Laborers and Carpenters over which union should be assigned fireproofing support work. Accordingly, SDI II does not mandate vacatur of the Award under the supremacy doctrine.
C. Public Policy
Lastly, Tutor Perini makes a related argument that the Award should be vacated because it violates public policy by contradicting the prior Board determination in SDI II .
As an exception to the typical deference afforded to an arbitrator's substantive decisions in an arbitration award, courts "are not bound to defer to an award which actually violates ... any explicit, well defined and dominant public policy." George Day , 722 F.2d at 1477 (citing W.R. Grace , 461 U.S. at 766, 103 S.Ct. 2177 ). Whether such a public policy exists "must *1335 be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17 , 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000) (internal quotation marks and citation omitted). And, for a court to vacate an arbitration award, the public policy at issue must be "one that specifically militates against the relief ordered by the arbitrator." Stead Motors , 886 F.2d at 1212-13 (citing Misco , 484 U.S. at 44-45, 108 S.Ct. 364 ). Accordingly, "the public policy exception is narrow," E. Associated Coal , 531 U.S. at 63, 121 S.Ct. 462, and "courts should be reluctant to vacate arbitral awards on public policy grounds," Ariz. Elec. Power Co-op., Inc. v. Berkeley , 59 F.3d 988, 992 (9th Cir. 1995). The burden of proof of a violation of public policy falls on the party seeking to vacate the arbitration award. United Food & Commercial Workers Int'l Union, Local 588 v. Foster Poultry Farms , 74 F.3d 169, 174 (9th Cir. 1995).
The only reference Tutor Perini makes to public policy is its interpretation of the application of the supremacy doctrine, that an arbitrator's award that is inconsistent with a Board decision violates public policy. Dkt. 25 at 1. Courts have interpreted the supremacy doctrine as invalidating arbitration awards that conflict with § 10(k) determinations on public policy grounds. See, e.g. , Stevens , 743 F.2d at 1275 (citing George Day and refusing to defer to arbitrator's decision on public policy grounds where the award "is inconsistent with previous Board findings involving the same parties"); Cal. Pac. Med. Ctr. v. Serv. Emps. Int'l Union , No. C 06 4685 SC, 2007 WL 81906, at *7 (N.D. Cal. Jan. 9, 2007) (an arbitrator's finding that an employer and union stipulated to particular facts "contradicts the NLRB's holding that the parties did not so stipulate" and therefore "the part of the Award which is based on that finding runs contrary to public policy and must be vacated"). However, the Ninth Circuit has previously rejected the argument that an arbitration award violates public policy where the result of the award conflicts with prior or subsequent Board determinations, but the award itself relies on the same reasoning employed by the Board. See Sea-Land , 939 F.2d at 873 ("[T]he results of the arbitration awards and the NLRB/Court of Appeals decisions may conflict, but the reasoning does not. Thus, continued reliance on the arbitration awards' reasoning by either the Union or the arbitrator does not violate a well-defined or dominant public policy.").
While it is unclear to the Court whether the supremacy doctrine is independent of the arbitration standards of review set forth above, or whether the supremacy doctrine falls under the narrow public policy exception, the Court holds that Tutor Perini has not satisfied either standard to vacate the Award. As analyzed above, the Award does not contradict, directly or indirectly, any prior § 10(k) determination made by the Board regarding SDI's employees. The subcontracting dispute is wholly independent from any jurisdictional claims from competing unions over which employees of SDI have the right to perform certain plastering work. As in Sea-Land , the Award relies on the same reasoning that the Board has consistently followed regarding the interpretation of a subcontracting grievance, even though the Award reaches the outcome that Tutor Perini violated the Laborers CBA by subcontracting fireproofing work to a non-Laborers subcontractor.
Tutor Perini has not articulated an explicit, well defined public policy that directly contravenes any of the arbitrator's determinations *1336 in the Award. Therefore, the Court holds that the Award was not a violation of public policy.
IV. Extension of Time for Motion for Attorneys' Fees
Laborers requests seven additional days following the Court's resolution of this case to file a motion for attorneys' fees. Dkt. 19 at 19-20. Counsel for Laborers has not articulated a legitimate reason why it cannot duly file its motion for fees within fourteen days, as provided by Federal Rule of Civil Procedure 54(d)(2)(B)(i). Therefore, Laborers' request for an extension to file a motion for attorneys' fees is DENIED.
V. Conclusion
The Court acknowledges the position in which Tutor Perini found itself when faced with a choice between two potentially irreconcilable collective bargaining agreements with competing unions regarding fireproofing support work. However, as the general contractor, Tutor Perini is not the entity responsible for making decisions regarding contested work assignments-that responsibility falls upon the subcontractors Tutor Perini hires. As long as Tutor Perini complies with the rest of the provisions of its collective bargaining agreements with the unions, Tutor Perini is protected from any jurisdictional disputes at the employee level.
Despite being insulated from jurisdictional disputes as the general contractor, Tutor Perini brought the instant dilemma upon itself by hiring SDI, a Carpenters-only subcontractor, instead of KHS & S, a Carpenters-and-Laborers subcontractor, in violation of its subcontracting obligations to Laborers under the Laborers CBA. Tutor Perini knew that, based on its subcontracting obligations to both unions, Tutor Perini would be exposed to a grievance from Laborers any time it hired a non-Laborers subcontractor for fireproofing. Now, Tutor Perini must bear the costs of its decision. In this case, the only issue before the Court was to determine whether the arbitrator's Award finding that Tutor Perini committed a subcontracting violation should be upheld. As set forth above, the Court resolves that question in the affirmative, particularly in light of the highly deferential standard of review applicable to arbitral awards.
Tutor Perini's concern about overlapping claims to fireproofing support work between its agreements with Laborers and Carpenters was not Tutor Perini's responsibility as the general contractor and is simply not at issue before the Court. Tutor Perini was not allowed to disregard the subcontracting provision in the Laborers CBA based on its erroneous interpretation of a prior § 10(k) determination by the Board as holding that the Carpenters CBA covers fireproofing support work at the exclusion of the Laborers CBA. While the Court believes there may be merit to Tutor Perini's concern that a jurisdictional dispute exists between the Laborers CBA and the Carpenters CBA regarding fireproofing support work, that question is not germane to the Court's responsibility to confirm or vacate the arbitrator's Award resolving Laborers' subcontracting grievance. If Tutor Perini's motivation behind these proceedings is for a final resolution regarding which union should have jurisdiction over fireproofing support work moving forward, Tutor Perini will need to pursue closure on the jurisdictional question another day; until then, Tutor Perini may remain liable for violations of its subcontracting duties by failing to hire a fireproofing subcontractor that is a signatory with both Carpenters and Laborers.
Accordingly, for the reasons articulated above, the Court finds that the Award does *1337 not conflict with any prior § 10(k) determinations made by the Board, and the Award must be upheld and confirmed. Tutor Perini's motion to vacate the arbitration award is DENIED, and Laborers' motion to confirm the arbitration award is GRANTED.
IT IS SO ORDERED.

The MLA specifically exempts jurisdictional disputes from the grievance process, instead requiring competing unions to settle their jurisdictional dispute themselves. See Dkt. 21 Ex. 4, Art. IV § F; id. Art. VI § L.

This statement is true if Tutor Perini subcontracts fireproofing work and fireproofing support work together in the same bidding process. If Tutor Perini segregated fireproofing support work as a separate bid from the fireproofing work itself, then Tutor Perini might plausibly receive competing bids from a purely Carpenters subcontractor and a purely Laborers subcontractor specifically for the fireproofing support work. There is no evidence in the record that would allow the Court to determine whether it would be feasible or practicable for Tutor Perini to accept separate bids for fireproofing work and fireproofing support work; the Court's explanation here merely illustrates the nature of the bids Tutor Perini actually received for fireproofing work in this case.

At the hearing on the parties' motions to confirm or vacate the Award, the Court requested supplemental briefing on the issue of the arbitrator's authority to decide his own jurisdiction. See Dkt. 24. Tutor Perini's supplemental brief did not address the issue of arbitrability at all, instead arguing that the Award violated public policy. See Dkt. 25.

As explained below in Section III.B.2, Tutor Perini is incorrect on the merits that the subcontracting grievance was equivalent to a jurisdictional dispute that could have been heard by the Board.

See Cal. Lab. Code §§ 1720 et seq.

Following SDI II , there was a third proceeding before the Board regarding a dispute between SDI and Local 200. See Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200 , 357 N.L.R.B. 1921 (2011) ("SDI III "). In SDI III , the Board issued an order requiring Local 200 to "[c]ease and desist from" seeking to enforce arbitration awards contrary to the Board's ruling in SDI II or pursuing state court actions in an attempt to require SDI to reassign plastering work at the public works projects from Carpenters to Local 200. Id. at 1925. In an unpublished opinion, the Ninth Circuit affirmed the Board's decisions in SDI II and SDI III . See Standard Drywall, Inc. v. N.L.R.B. , 547 Fed. Appx. 809 (9th Cir. 2013).

The other cases cited by Tutor Perini do not address a subcontracting dispute between a union and a contractor in the absence of a challenge that the union's employees were entitled to perform the disputed work, and therefore do not apply. See, e.g., T. Equip. Corp. v. Mass. Laborers' Dist. Council , 166 F.3d 11, 18-19 (1st Cir. 1999) (affirming vacatur of arbitrator's award of lost wages to a union when the union threatened to stop working at the project site after the contractor assigned disputed work entirely to a competing union in violation of the collective bargaining agreement); Advance Cast Stone Co. v. Bridge, Structural & Reinforcing Iron Workers, Local Union No. 1 , 376 F.3d 734, 742 (7th Cir. 2004) (distinguishing Hutter and Miron because the dispute at issue was not a subcontracting grievance but instead an employer responsible for both the contested work assignment and the breach of a collective bargaining agreement); Dist. Council of Iron Workers of State of Cal. & Vicinity, AFL-CIO v. Swinerton & Walberg, Inc. , 752 F.Supp. 344, 344-45 (N.D. Cal. 1990) (distinguishing Local 701 because the Board's work assignment at issue was unconditional and required the general contractor to assign the disputed work to the prevailing union even if the general contractor were to hire a new subcontractor with an agreement with a different union); Cal. Pac. Med. Ctr. v. Serv. Emps. Int'l Union , No. C 06 4685 SC, 2007 WL 81906, at *7 (N.D. Cal. Jan. 9, 2007) (vacating a portion of an arbitrator's award regarding appropriate bargaining units outside of the context of construction contracting because the arbitrator assumed that the parties stipulated to particular facts which "contradicts the NLRB's holding that the parties did not so stipulate").

Unions are authorized and encouraged to resolve their jurisdictional disputes voluntarily via arbitration outside the presence of the Board, in order to prevent costly workplace strikes or other labor delays. See, e.g. , Dkt. 21 Ex. 3, Art. III § A (the Short-Form Agreement requiring arbitration of all grievances or disputes between signatories, including jurisdictional disputes). When Tutor Perini responded to Laborers' demand letter and characterized the subcontracting dispute as a jurisdictional claim to the same work between Laborers and Carpenters, Dkt. 21 Ex. 2, nothing prevented Laborers from agreeing to arbitrate that jurisdictional claim with Carpenters directly. Nevertheless, Laborers was not required to arbitrate that question voluntarily in order to resolve Tutor Perini's subcontracting violation, and Laborers chose not to do so.

Once the jurisdictional dispute is conclusively resolved, either by the unions themselves or by the Board in a § 10(k) proceeding, Tutor Perini would have clarity as to which collective bargaining agreement covers fireproofing support work over the other, where both agreements overlap. For instance, a broad determination by the Board regarding which union has jurisdiction over fireproofing support work would protect Tutor Perini from liability for subcontracting grievances; if the union that lost before the Board sought to enforce an arbitration award for a subcontracting grievance by claiming that the work was covered by the losing union's collective bargaining agreement, the arbitrator's award in that union's favor may be invalidated under the supremacy doctrine as directly conflicting with the Board's § 10(k) determination. Moreover, Tutor Perini could bring a charge before the Board for the union's pursuit of arbitration over a conflicting subcontracting grievance, and if the Board agreed with Tutor Perini and found that the union committed an unfair labor practice, the Board in its § 10(k) determination could enjoin the union from pursuing any concurrent arbitration proceedings inconsistent with the Board's jurisdictional mandate. See, e.g., SDI III , 357 N.L.R.B. at 1925 (requiring union to cease and desist from efforts to enforce arbitration awards that conflict with prior Board determinations). Until the jurisdictional question is resolved, however, Tutor Perini remains obligated under both collective bargaining agreements for hiring a fireproofing subcontractor that is a signatory with both Carpenters and Laborers.